**George W. LEWIS et al., Plaintiffs,**

v.

**George F. KUGLER, Jr., individually and in his official capacity as Attorney General of the State of New Jersey, et al., Defendants.**

Civ. No. 1712–70.

United States District Court,
D. New Jersey.

March 16, 1971.

Frank Askin, Richard Chused, Newark, N. J., John Zwerling, Arlington, Va., for plaintiffs.

George F. Kugler, Jr., Atty. Gen. of N. J., Trenton, N. J., by Richard B. McGlynn, George Dougherty, Deputy Attys. Gen., for defendants.

SHAW, District Judge.

The Court has determined that it should edit and supplement oral opinion dictated on the record at the conclusion of hearing in this matter and does so as follows:

Plaintiffs seek a declaratory judgment and injunctive relief alleging deprivation of civil rights secured by the First, Fourth and Fourteenth Amendments to the United States Constitution. There is also a reference to the Ninth Amendment and the Commerce Clause, Article I, Section 8.

The matter came on for hearing on an order to show cause why a preliminary injunction should not issue and on motion of defendants to dismiss the action. It was also argued in defendants' brief that a three-judge court should be convened pursuant to the provisions of 28 U.S.C. § 2281. The Court heard arguments of counsel on the application for injunctive relief and on the motion to dismiss but, before reaching a decision, permitted plaintiffs to present testimony of three witnesses who, plaintiffs' counsel stated, represented a fair sampling of the testimony of a large number of witnesses that plaintiffs had available.

The constitutionality of a state statute is not challenged and the facts presented by the allegations of plaintiffs do not present a situation that requires decision by a three-judge statutory court pursuant to 28 U.S.C. § 2281.

Plaintiffs seek to enjoin what they consider to be enforcement of an official police policy of state-wide application which is alleged to violate constitutional rights. The complaint must be dismissed for reasons hereinafter stated.

It is alleged in the complaint that this is a class action by plaintiffs consisting " * * * of persons of highly individualized personal appearance who travel in private vehicles upon the public toll roads and public highways of the State of New Jersey and who are subject, solely because of said highly individualized personal appearance, to the pattern and practice of selective halting and unreasonable searching of vehicles and travellers.

* * * The said sub-class of persons of highly individualized personal appearance includes, but is not limited to, persons wearing beards, unusual hair styles, or unorthodox clothing or who in some other way are visually distinguishable from the average user of the said roads (said sub-class hereinafter referred to as 'longhaired travellers')."

Observation of the witnesses who testified and others seated in the courtroom ready to testify as plaintiffs left no doubt of the "highly individualized" appearance both in the matter of dress,

extensive covering of hair over the face with many and varied bizarre forms of trim and lengthy tresses of hair on the head streaming and curling down the back. Whether deliberately designed to attract attention or not, the appearances were, to say the least, "eye catching." The reference in the complaint to the "longhaired travellers" was most apt. Exhibit A attached to the complaint depicts the more moderate individualized appearances as distinguished from those which the Court observed in the courtroom.

The principal thrust of the action is that individuals such as plaintiffs and others of like appearance are stopped frequently by New Jersey State Police while traveling on public highways in the State of New Jersey. N.J.S.A. 39:3-29 authorizes police officers of the state to stop vehicles and demand that the operator exhibit his drivers license and registration. The constitutionality of this statute is not challenged. It is contended, however, that the New Jersey State Police singled out persons such as plaintiffs and other persons of like appearance for more frequent surveillance than that directed to other travelers and that illegal searches of the vehicles operated were routinely conducted. Some of the searches were unproductive, but it was conceded that nine produced contraband mostly of marijuana and that nine of the plaintiffs are presently subjects of criminal prosecution in the state courts.

As to the remaining plaintiffs, it does not appear that they have been subjected to criminal prosecution or even threatened with it. But they deplore the inhibiting or "chilling effect" upon their future activities. The Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971), observed, "But this sort of 'chilling effect' * * * should not by itself justify federal intervention." If others in the alleged class who have not been prosecuted or threatened with prosecution are inhibited in their activities by fear of apprehension for violations of law, the result seems to be consistent with effective observance of the law. Valid criminal statutes would serve little purpose unless they had some inhibiting effect. " * * * [P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs. * * * " Younger v. Harris, supra, for federal court interference with state law enforcement policy pursuant to valid criminal statutes.

■ Those plaintiffs who are the subjects of pending prosecution in state courts have an adequate forum for the protection of their constitutional rights and those who have not been subjected to prosecution or threatened with it have no valid claim to federal court relief which will calm their inhibitions.

The increasing prevalence of the mistaken notion that constitutional rights in cases where state courts have jurisdiction will receive more just and competent consideration in a federal district court than could be expected in a state court should be discouraged. If we ignore the principle of comity and the role of federalism, the burden of the volume of litigation that will be thrust upon the federal court in bypassing the state court will become increasingly great. Of course, where it has been demonstrated that a state court will not protect and enforce federally secured constitutional rights, relief is then and should be available in the federal court. But such is not the situation in this case where counsel for plaintiffs conceded in oral argument that plaintiffs had selected the federal court merely because it was their preference to proceed here. There is no contention that the relief sought here would not be available in a New Jersey state court.

■ It is now clear from the decision of the United States Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971), that a federal court should not interfere with state criminal prosecutions except upon a showing of "extraordinary circum-

stances where the danger of irreparable loss [is] both great and immediate." [1] Where injunctive relief would be impermissible, declaratory relief should ordinarily be denied.

> Ordinarily * * * the practical effect of the two forms of relief will be virtually identical, and the basic policy against federal interference with pending state criminal prosecutions will be frustrated as much by a declaratory judgment as it would be by an injunction. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

The fact that there are a number of plaintiffs against whom no criminal prosecutions are pending does not afford any ground for relief in this court based on allegations of anticipated future activities by the New Jersey State Police. Here again in the absence of a showing of irreparable injury the federal district court should not interfere with state law enforcement policy. See Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971). Hence where a number of plaintiffs are joined some of whom have criminal prosecutions pending against them and some of whom do not, the non-intervention principle enunciated in *Younger* applies.

Counsel for plaintiffs stressed the injury caused by alleged illegal searches. A hearing on the legality of these searches (which produced the contraband) while state prosecution is pending would be a most unwarranted interference with orderly procedure in the state court prosecutions. State courts have the obligation and equal competence with federal courts to enforce rights secured by the Fourth Amendment to the United States Constitution and in appropriate cases in this state have done so from time to time. Insofar as plaintiffs subject to state prosecution are aggrieved with what they conceive to be unlawful searches and seizures, there is an available remedy in the state court on motion to suppress evidence.

Searches of vehicles alleged to have been made in violation of the Fourth Amendment were emphasized in oral argument with the suggestion that the alleged illegal searches made and to be anticipated were indicative of bad faith on the part of the New Jersey State Police and deliberate harassment by them of the so-called longhaired travelers. The invitation extended to the Court was to hear the testimony of 25 to 35 witnesses and to decide how many of the searches were made without probable cause. This Court feels that if any one of the plaintiffs has been aggrieved by a search conducted in violation of the Fourth Amendment to the United States Constitution, he has an adequate remedy at law and that the broad equitable injunctive relief sought in this court is not appropriate.

What constitutes an unreasonable search and seizure under the Fourth Amendment is a question that must be resolved in the light of the totality of circumstances in each case. Of course the "individualized" appearance of a person does not of itself justify the conclusion by a police officer that such person has probably committed or is likely to commit a crime. But in the matter of the likely possession and use of narcotic drugs an experienced eye may note significant facial expressions, conduct and manner of speech from which reasonable inferences may be drawn. Also, a police officer who has had extensive training and experience in law enforcement may, with sound reason derived from that training and experience, direct more attention in the performance of his police duties to the activities of some persons than to others. There is nothing unreasonable in particularized surveillance of certain types of persons

---

1. See Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1929) and Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Cited with approval by the Supreme Court in *Younger*.

among whom a police officer, by virtue of his experience, has found valid reason to believe the possession and use of narcotic drugs is more prevalent than among other types of persons.

What may have been unreasonable surveillance before the plague of addiction to narcotics beset so many groups in our society must be considered in a different context when the need to control illegal transportation, possession and use of narcotics is so critically needed. Reasonable cause for the probable belief that a crime has been committed or is about to be committed is all that is required to justify a search and seizure under the Fourth Amendment and each case must be tested on its own facts. Since plaintiffs subjected to prosecution because of contraband in their automobiles have an adequate forum in the state court to test the legality of any search and seizure, this Court should not burden itself with a hearing in each case leading to an opinion to be superimposed upon an orderly state court prosecution.

As to the class of persons which plaintiffs purport to represent, the injunctive relief sought here which would restrain activity of the New Jersey State Police is not only difficult to conceive but almost impossible to fashion effectively. An enforceable order directed to future police activity would necessarily set forth in specific detail the extent, mode and manner of highway patrol. It certainly would not be appropriate to restrain New Jersey State Police from stopping automobiles merely because they were occupied by the so-called long-haired travelers as distinguished from other citizens. Nor would it be appropriate for a federal court to undertake to delineate the specific kind of conduct in which an officer of the New Jersey State Police could engage in the performance of his official duties. Here again such a course of action would be a most unwarranted intrusion by a federal court upon the functions of the executive branch of the state government and the inhibiting effect on law enforcement and police morale would, in the opinion of this Court, be more disastrous to the public interest than the inhibiting effect of which plaintiffs complain.

The application to convene a three-judge court is denied; the motion for a preliminary injunction is denied; and the complaint of plaintiffs is dismissed without prejudice and without costs.