George W. LEWIS et al., Appellants,

v.

George F. KUGLER, Jr., individually and in his official capacity as Attorney General of the State of New Jersey, et al.

No. 71–1227.

United States Court of Appeals,
Third Circuit.

Argued June 22, 1971.

Decided Aug. 4, 1971.

As Amended Sept. 28, 1971.

Frank Askin, Richard H. Chused, Newark, N. J., for appellants.

Fred H. Kumpf, Deputy Atty. Gen. of N. J., Div. of Crim. Justice (George F. Kugler, Jr., Atty. Gen. of N. J., Trenton, on the brief), for appellees.

Before VAN DUSEN and ROSENN, Circuit Judges, and KRAFT, District Judge.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Plaintiffs appeal from a March 11, 1971, order of the United States District Court for the District of New Jersey, 324 F.Supp. 1220, denying plaintiffs' motion for a preliminary injunction and dismissing plaintiffs' complaint.[1]

Plaintiffs, thirty-seven named individuals, filed a complaint under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1964), on behalf of themselves and all others similarly situated seeking declaratory and injunctive relief against the defendants. Plaintiffs allege that they "have travelled in private vehicles upon the public toll roads and public highways of the State of New Jersey and * * * have been subjected to arbitrary stops and unreasonable searches of their persons and their vehicles by defendant[s]."

---

1. Defendants have not appealed from that portion of the March 11, 1971, district court order denying defendants' motion to convene a district court of three judges pursuant to 28 U.S.C. §§ 2281, 2284 (1964).

Plaintiffs seek pursuant to Fed.R.Civ.P. 23 to represent a class consisting of "persons who travel in private vehicles upon the public toll roads and public highways of the State of New Jersey and who are subject to [a] pattern and practice of halting and unreasonably searching vehicles and travellers." Plaintiffs also seek pursuant to Fed.R.Civ.P. 23(c) (4) (B) to represent a subclass consisting of "persons of highly individualized personal appearance who travel in private vehicles upon the public toll roads and public highways of the State of New Jersey and who are subject, solely because of said highly individualized personal appearance, to [a] pattern and practice of selective halting and unreasonable searching of vehicles and travellers." Plaintiffs characterize members of this subclass as "long-haired highway travelers." Defendants are the Attorney General of the State of New Jersey, the Superintendent of State Police, fourteen named individual New Jersey State Troopers, and all other members of the New Jersey State Police "who have participated in carrying out against the named plaintiffs the pattern and practice of halting and unreasonably searching vehicles and travellers."

The complaint charges that the defendants engage in a "pattern and practice of unreasonable searches of vehicles and travellers carried on without probable cause," resulting in a denial to plaintiffs, the plaintiff class consisting of all travellers, and the plaintiff subclass consisting of all long-haired travelers of their rights to travel and to be free from unreasonable searches. The complaint also charges that this "pattern and practice," which the complaint charges is directed selectively at "long-haired travellers" on the basis of their "highly individualized personal appearance," works a denial of due process, equal protection, freedom of association, and freedom of expression. The plaintiffs find protection for the rights denied in the first, fourth, ninth and four-

teenth amendments to the Constitution, as well as in the commerce clause of article I, section 8. The plaintiffs support these allegations with 17 pages in the complaint of detailed factual recitations relating to 25 separate incidents involving contact between plaintiffs and defendants, as well as with 25 affidavits in support of their motion for a preliminary injunction. The complaint seeks, in addition to a declaration that the alleged pattern and practice of selective searches is unconstitutional and an injunction against its continuance, broad equitable relief in the nature of district court approval of a plan to be formulated by certain defendants to cure the alleged deprivations of constitutional rights and to prevent their recurrence. The complaint asks that the plan include published notices that the pattern and practice of unlawful searches is being terminated, official handbills to be given to motorists stopped by the State Police advising them of the injunctive relief and describing how they may report violations of the court's decree, and signs on the rear of State Police vehicles advising that "unreasonable searches are illegal." The complaint also seeks an injunction prohibiting the prosecution of 10 of the named plaintiffs by state officials as a result of the searches of the named plaintiffs and their vehicles described in the complaint.

The district court ordered a hearing on plaintiffs' motion for a preliminary injunction. After hearing the testimony of three of plaintiffs' witnesses regarding incidents of allegedly unlawful searches to which they had been personally subjected, the court ordered a recess, indicating that a decision on defendants' motion to dismiss would be announced after the recess. Following the recess, counsel for plaintiffs made an offer of proof to show what the plaintiffs were prepared to prove further in support of their motions for a preliminary injunction.[2] The court then granted defendants' motion to dis-

---

2. Counsel for the plaintiffs made the following offer of proof:

Now, there are other kinds of witnesses we do plan to produce. For

miss the complaint, giving an oral opinion on the legal issues involved, which was supplemented by a written opinion filed March 16, 1971. This appeal followed. It is not disputed on this appeal that the complaint states a federally cognizable cause of action. The issues here are limited to whether the district court should grant relief in the event that the plaintiffs prove the allegations in their complaint.

## I.

### THE ABSTENTION DOCTRINE

■■ In dismissing the complaint, the district court invoked the abstention doctrine, holding that principles of comity required that plaintiffs' claim first be presented to the New Jersey state courts. This is an action brought under the federal Civil Rights Act, raising federal constitutional claims and prior resort to the state courts is not required.[3] Federal courts faced with federal constitutional claims should abstain only when there is an unresolved question of state law which only the state courts can authoritatively construe.[4] Abstention in such cases permits state court decisions which may render unnecessary the resolution of constitutional issues, and thereby avoid any possible strain on our system of federalism.[5] There is no uncertain state law issue in this case.

The Supreme Court considered the availability of state remedies in the context of actions brought under 42 U. S.C. § 1983 in Monroe v. Pape, 365 U.

example, I do plan to produce a newspaper reporter who will testify to the fact that he rode around with the State Police on newspaper assignments for several nights about a year ago and witnessed. in the course of about twenty to twenty-four hours of riding with State Police, some twenty-five searches which, as he will describe them, are unconstitutional searches in the course of about three nights, * * *

\* \* \* \* \*

I have under subpoena, and he may be in the courtroom now, I am not sure. I asked him to be here; a Mr. ——— the Court Clerk of the Bergen County District Court, who has made public statements quoted in the newspapers to the effect that the State Police have a practice of stopping longhaired drivers on the highways in order to try to find drugs in their cars.

We have some other witnesses who have not themselves been searched. For example, two attorneys from Philadelphia, whom we had planned to produce, who would testify to the notoriety of the practices of the New Jersey State Police among the long-haired community and the impact which this practice and its notoriety have had on the traveling habits of members of the long-haired community.

In addition, your Honor, there is some documentary evidence which we would be prepared to introduce which includes, for example, a number of admissions by State Troopers at various

hearings as to their policy or their practice of searching out long-haired travelers.
N.T. 44–46.

3. *See, e. g.*, Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); McNeese v. Board of Education, 373 U.S. 668, 671–672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Burnett v. Short, 441 F.2d 405 (5th Cir. 1971).

4. *See, e. g.*, Wisconsin v. Constantineau, 400 U.S. 433, 437–439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Fornaris v. Ridge Tool Co., 400 U.S. 41, 43, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970); Reetz v. Bozanich, 397 U.S. 82, 86–87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Harrison v. NAACP, 360 U.S. 167, 176–177, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959).

5. *See, e. g.*, Reetz v. Bozanich, 397 U.S. 82, 86–87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Harman v. Forssenius, 380 U.S. 528, 534 & n. 7, 85 S.Ct. 1177, 14 L.Ed. 2d 50 (1965); Railroad Com'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and stated:

> It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. Hence the fact that Illinois by its constitution and laws outlaws unreasonable searches and seizures is no barrier to the present suit in the federal court.

365 U.S. at 183, 81 S.Ct. at 482.

In discussing the expansion of federal judicial power resulting from the enactment of § 1983 in the Civil Rights Act of 1871, the Court stated in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967):

> Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility equally with the federal courts, " * * * to guard, enforce, and protect every right granted or secured by the constitution of the United States * * *," Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 28 L.Ed. 542. "We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum." [Citations omitted.]

389 U.S. at 248, 88 S.Ct. at 395.

This principle has not been altered by the recent decisions of the Supreme Court in Younger. v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S. Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971), and Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971). These cases deal with the circumstances under which federal courts may appropriately intervene in pending state criminal prosecutions,[6] and are pertinent to this case only insofar as the complaint seeks relief in the nature of an injunction against state criminal proceedings or declaratory relief which would interfere with state criminal proceedings. They are not applicable to situations where no prosecution is pending in state courts at the time a federal proceeding is begun,[7] and they do not alter the abstention doctrine insofar as it relates to federal Civil Rights Act claims which do not seek relief that entails intervention in state criminal proceedings. We

---

6. All of these cases, with the exception of Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), deal with the circumstances under which a federal court may appropriately enjoin a pending state criminal prosecution. *Samuels* dealt with the circumstances under which a federal court may appropriately inject itself into a pending state criminal prosecution by issuing a declaratory judgment pursuant to the Federal Declaratory Judgment Act of 1934, 28 U.S.C. § 2201 (1964), adjudicating the validity or invalidity of the state statute upon which the pending criminal prosecution is based. The decisions in these cases, which turn on established principles of equity, focus on Federal court intervention in pending state court proceedings. These decisions are inapplicable to the instant case, except insofar as the instant complaint seeks an injunction against pending state criminal proceedings and declaratory judgments which would interfere with pending state criminal proceedings, because the bulk of the instant complaint does not seek to interfere with pending state criminal proceedings. The request for relief against pending state criminal proceedings relates to only 10 of the 37 named plaintiffs, and those 10 seek other relief as well.

7. *See, e. g.,* Younger v. Harris, 401 U.S. 37, 41, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

therefore hold that it was improper for the district court to invoke the abstention doctrine to dismiss any portions of the complaint other than those seeking an injunction against pending state criminal prosecutions and declaratory relief involving pending state criminal prosecutions.

## II.

### THE STATE CRIMINAL PROCEEDINGS

 In view of Younger v. Harris, *supra,* and Samuels v. Mackell, *supra,* insofar as the complaint sought an injunction against the state criminal proceedings pending against 10 of the named plaintiffs, and insofar as it sought a declaratory judgment holding unconstitutional the searches and seizures forming the basis of the state criminal proceedings pending against the ten, dismissal was proper.[8]

The Court held in *Younger* that the possible unconstitutionality of a statute "on its face" does not justify an injunction against attempts to enforce it, absent a showing of bad faith, harassment, or other unusual circumstances sufficient to establish irreparable injury and therefore call for equitable relief. While this case does not pose a challenge to the constitutionality of a state statute, the equitable principle of

*Younger* is nonetheless applicable, for the focus of *Younger* is on intervention in pending state criminal proceedings, and that is precisely what plaintiffs seek in part in this case. Plaintiffs have made no showing, and have not alleged or offered to prove facts which if true would establish, that the pending state criminal proceedings were brought in bad faith, were brought merely to harass plaintiffs, or are being prosecuted under circumstances establishing "the kind of irreparable injury, above and beyond that associated with the defense of a single prosecution brought in good faith, that ha[s] always been considered sufficient to justify federal intervention." 401 U.S. at 48, 91 S.Ct. at 752. While plaintiffs allege that the searches and seizures forming the basis of the state criminal proceedings were conducted in bad faith, that allegation, if true, would not establish the irreparable injury necessary to justify federal court intervention to protect plaintiffs' rights. The plaintiffs allege police misconduct, but an injunction against pending state criminal proceedings would operate against the prosecutorial authorities, and there is no allegation that they have either fostered or taken part in the alleged misconduct. The facts alleged here are quite different from those alleged in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965),

8. This part of the complaint requests:
 That preliminary and permanent injunctions issue prohibiting the defendant, Attorney General Kugler, and all his agents, servants, employees, and all others under his control or in concert with him, from prosecuting any complaint resulting from the searches of said plaintiffs and their vehicles as detailed in the foregoing complaint against the following named plaintiffs: Charles W. Jaeger, Ellen Urman, Edward Piwowarski, Christopher Paul Barone, Alan P. DeMott, Bruce J. Nugent, Alan C. Morrill, Paul Schneider, Benjamin Nechin, and Alan H. Gordon, in any of the following criminal proceedings: grand jury proceedings, trial proceedings, and any other criminal proceedings instituted against the above named plaintiffs.

The district court treated this paragraph as a request for injunctive relief against future prosecutions of the 17 named plaintiffs who were not subject to pending state criminal proceedings at the time the suit was instituted. Such relief must be denied, not only because the complaint and offers of proof do not make out a case for such injunctive relief, for the reasons detailed in Part II of this opinion, but also because the 17 against whom prosecutions apparently are not threatened are not appropriate plaintiffs in an action for such injunctive relief. *See* Younger v. Harris, 401 U.S. 37, 41–42 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

where the plaintiffs offered to prove that the prosecutorial authorities threatened to enforce statutes against the plaintiffs without any expectation of securing valid convictions, that despite a summary vacation of search and arrest warrants by a state judge for lack of probable cause the prosecutorial authorities were continuing to threaten new indictments and prosecutions based on the evidence ordered suppressed by the state judge, and that the prosecutorial authorities were engaging in a plan of arrests, seizures, and threats of prosecution for the sole purpose of harassing plaintiffs in order to discourage them from attempting to vindicate the constitutional rights of black citizens of Louisiana. In this case, as in *Younger*, there is no allegation that the prosecutions are brought in bad faith, or are only part of a series of repeated prosecutions to which the 10 plaintiffs being prosecuted will be subjected. Here the 10 plaintiffs being prosecuted will have an opportunity to raise their constitutional claims in the state criminal proceedings, and there is no indication that defense of the state criminal prosecution will not assure adequate vindication of their constitutional rights.[9] The injury that they face is solely "that incidental to every criminal proceeding brought lawfully and in good faith," and they are therefore not entitled to equitable relief.[10]

Since the equitable principles of *Samuels* are applicable to the facts of this case, and since an injunction against the state criminal proceedings pending against the above-mentioned 10 plaintiffs is barred by those same equitable principles, relief by way of a declaratory judgment that the searches and seizures forming the basis of the state criminal proceedings against the 10 are unconstitutional should also be denied. The Court in *Samuels* held that "relief by way of declaratory judgment should [be] denied without consideration of the merits." 401 U.S. at 66, 91 S.Ct. at 768. This case differs from *Samuels*, however, in that the 10 plaintiffs being prosecuted, in addition to seeking relief against the prosecutorial authorities, also seek relief against the New Jersey State Troopers. As we have noted, that relief is not barred by the *Younger* and *Samuels* line of cases. Accordingly, the district court may consider the merits of the constitutional claims advanced by the 10 plaintiffs being prosecuted, as a part of its consideration of all of the evidence offered by plaintiffs to prove a pattern and practice of unlawful police misconduct, but the district court should not enter a declaratory judgment with respect to the constitutionality of the searches and seizures forming the basis of the state criminal proceedings against the 10. The *Younger* and *Samuels* line of cases does not bar relief by way of declaratory judgment with respect to the 17 other named plaintiffs, against whom state criminal prosecutions are not pending. We need express no opinion on the propriety of declaratory judgments with respect to the 17 other named plaintiffs on the present record.

## III.

### THE PROBLEM OF REMEDY

The district court appears to have based its dismissal in part upon the belief that, even if plaintiffs are able to prove that the New Jersey State Troopers are selectively subjecting "long-haired highway travelers" to a pattern and practice of unconstitutional searches and seizures, it would be either improper

9. *See* Younger v. Harris, 401 U.S. 37, 48–49, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *cf.* Dombrowski v. Pfister, 380 U.S. 479, 485–486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

10. *See* Younger v. Harris, 401 U.S. 37, 49, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971);

Douglas v. City of Jeannette, Pa., 319 U.S. 157, 164, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Watson v. Buck, 313 U.S. 387, 400, 61 S.Ct. 962, 85 L.Ed. 1416 (1941); Beal v. Missouri Pac. R. R., 312 U.S. 45, 49, 61 S.Ct. 418, 85 L.Ed. 577 (1941).

to grant relief, or impossible to fashion appropriate relief. The district court stated:

> As to the class of persons which plaintiffs purport to represent, the injunctive relief sought here which would restrain activity of the New Jersey State Police is not only difficult to conceive but almost impossible to fashion effectively. * * * [Such relief] would be a most unwarranted intrusion by a federal court upon the functions of the executive branch of the state government and the inhibiting effect on law enforcement and police morale would, in the opinion of this Court, be more disastrous to the public interest than the inhibiting effect of which plaintiffs complain.

■ If the plaintiffs can establish that they are subjected to a deliberate pattern and practice of constitutional violations by the New Jersey State Troopers, we believe that they are entitled to appropriate injunctive relief. Persons who can establish that they are being denied their constitutional rights are entitled to relief,[11] and it can no longer be seriously contended that an action for money damages will serve adequately to remedy unconstitutional searches and seizures.[12] The United States Court of Appeals for the Fourth Circuit, in a unanimous en banc decision, has noted that neither the personal assets of police officers nor the nominal bonds they furnish afford a genuine hope of redress,

that there is no provision for compensation from public funds, and that the wrongs inflicted by unconstitutional police conduct are not readily measurable in monetary terms. Lankford v. Gelston, 364 F.2d 197, 202 (4th Cir. 1966) (en banc). The Supreme Court has characterized the prospect of pecuniary redress for the harm suffered as a result of unconstitutional searches and seizures as "worthless and futile." Mapp v. Ohio, 367 U.S. 643, 652, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In addition, history has demonstrated that the possibility of a judgment for money damages does not serve as an effective deterrent to future unconstitutional police conduct.[13]

The Supreme Court approved the use of an injunction as a remedy for unconstitutional police conduct in Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L. Ed. 1423 (1939).[14] The Fourth Circuit approved the use of an injunction as a remedy for unconstitutional searches and seizures by police in a unanimous, well-reasoned opinion in Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966) (en banc), a decision which has been cited with approval by the Court of Appeals for the District of Columbia Circuit in Gomez v. Layton, 129 U.S.App. D.C. 289, 394 F.2d 764 (1968), and by the Court of Appeals for the Seventh Circuit in Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969). In addition, the United States District Courts have often used injunctive relief

---

11. *See, e. g.,* Henry v. Greenville Airport Comm'n, 284 F.2d 631, 633 (4th Cir. 1960); Clemons v. Board of Education, 228 F.2d 853, 857 (6th Cir.), cert. denied, 350 U.S. 1006, 76 S.Ct. 651, 100 L.Ed. 868 (1956).

12. The United States Court of Appeals for the Seventh Circuit has noted that where, as in this case, it is alleged that first amendment rights have been chilled as a result of government action, a "presumption of irreparable harm is manifest." Schnell v. City of Chicago, 407 F.2d 1084, 1086 (7th Cir. 1969); *see*

Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

13. *See, e. g.,* Mapp v. Ohio, 367 U.S. 643, 651–652, 670, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Irvine v. California, 347 U.S. 128, 137, 74 S.Ct. 381, 98 L.Ed. 561 (1954); Lankford v. Gelston, 364 F.2d 197, 202 (4th Cir. 1966) (en banc).

14. This decision affirmed with modifications 101 F.2d 774 (3rd Cir. 1939), which had affirmed 25 F.Supp. 127 (D.N.J. 1938).

against unconstitutional police conduct,[15] and injunctive relief against state officials has frequently been imaginatively fashioned by the federal courts in school desegregation cases.[16]

The district court's concern about inhibiting lawful law enforcement is of course a proper concern. A federal court should avoid unnecessarily dampening the vigor of a police department by becoming too deeply involved in the department's daily operations, both because of the vital public interests at stake, and because of the danger that the court could become enmeshed in endless time-consuming bickering and controversy. Should the plaintiffs establish that a substantial threat of con-

stitutional violations exists, either directed by or tolerated by officials of the New Jersey State Troopers or the State of New Jersey, one means of remedying the situation available to the district court would be to direct appropriate orders to the responsible officials, with a view to having the situation corrected by them internally, by altering the police disciplinary procedure or otherwise. This is only one of numerous possible alternatives,[17] and whether it would be necessary or adequate to protect plaintiffs' rights of course depends upon the facts. Like any court of equity, the district court has very broad power to fashion a remedy appropriate to deal with the factual situation before the court.[18] Two considerations must be

15. See cases cited in Note, The Federal Injunction as a Remedy for Unconstitutional Police Conduct, 78 Yale L.J. 143, 146 n. 17 (1968), and in Lankford v. Gelston, 364 F.2d 197, 201 n. 5 (4th Cir. 1966) (en banc). Quite recently, on September 4, 1970, the United States District Court for the Eastern District of Pennsylvania, in Council of Organization on Philadelphia Police Accountability and Responsibility v. Tate, Civ.No. 70–2430 (E.D.Pa.), issued a temporary restraining order against unconstitutional searches and seizures by police. That order of September 4, 1970, provided in relevant part:

> The defendant police officials and all police officers in Philadelphia having notice hereof are restrained and enjoined until further hearing in this matter from violating the rights of the plaintiffs or any member of the class of plaintiffs guaranteed to them under the Constitution of the United States or directly and indirectly causing any such violation and particularly are restrained and enjoined from entering without warrant or probable cause the homes of plaintiffs and members of the class of plaintiffs or harassing or arresting said class members in violation of their rights as citizens. Nothing in this order shall be construed as limiting in any way the authority of the police to enforce the law in a lawful manner and to exercise and defend their own rights as citizens.

See N.T. 217–18.

This order was issued as a precautionary measure at a time when there was con-

siderable tension between the plaintiff class and the Philadelphia Police Department, and there was genuine reason for concern that the existing tension might dramatically escalate. See N.T. 218. After the issuance of this order, the feared escalation in tensions did not materialize. For a more comprehensive order of a similar nature, see the preliminary injunction of July 10, 1965, in Hicks v. Knight, Civ.No. 15,727 (E.D.La.), 10 Race Rel.L.Rep. 1504, 1505.

16. See cases cited in Note, The Federal Injunction as a Remedy for Unconstitutional Police Conduct, 78 Yale L.J. 143, 148 n. 20, 149 n. 25 (1968).

17. For example, should the court find that, unknown to their superiors, deprivations of constitutional rights are perpetrated by only a few of the defendants, it might be possible to fashion a remedial order only with respect to those defendants.

18. This broad power to fashion appropriate remedies extends from the power to issue injunctions against individual offenders and to appoint observers and special masters, to the power, in extreme cases, to appoint receivers. See, e. g., Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966) (en banc); Knight v. Board of Education, 48 F.R.D. 115 (E.D.N.Y. 1969); Murray v. Madigan, Civ.No. 51398 (N.D.Cal., filed May 29, 1969) (observers appointed to report to court events at mass arrest facilities); Kapral v. Jepson, 271 F.Supp. 74 (D.Conn. 1967); Turner v. Goolsby, 255 F.Supp. 724 (S.D.Ga.1965) (three-judge court)

borne uppermost in mind: first, deprivations of constitutional rights must be stopped promptly; and, second, unnecessary encroachment upon state and local government functions must be avoided.[19] We are confident that the district court, which is free to draw upon its wide experience, history, and the recommendations of responsible parties,[20] can fashion an appropriate remedy that will protect the constitutional rights of citizens, while preserving the integrity and efficiency of the law enforcement authorities.

If the plaintiffs establish that a substantial threat of directed or tolerated constitutional violations exists, the "inhibiting effect on * * * police morale" (see page 1350 above) is not the sole consideration for the court. As Mr. Justice Brandeis so eloquently observed 43 years ago in his dissenting opinion [21] in Olmstead v. United States, 277 U.S. 438, 471, 48 S.Ct. 564, 72 L.Ed. 944 (1928), and as this court recently noted in In re Grand Jury Proceedings No. 71–1088 (3rd Cir., filed May 28, 1971) (Slip opinion at 35):

> In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means— to declare that the government may commit crimes in order to secure the conviction of a private criminal— would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face.

277 U.S. at 485, 48 S.Ct. at 575.

We need not detail here the significance of unconstitutional police conduct or the importance to social stability and police morale of public respect for law enforcement authorities, for these matters have been adequately dealt with elsewhere.[22]

For the reasons stated above, the order of March 11, 1971, will be vacated, and this case will be remanded to the district court for proceedings consist-

(public school system placed in receivership); Butterworth v. Dempsey, 237 F.Supp. 302 (D.Conn.1965); United States v. Manning, 215 F.Supp. 272, 292–294 (W.D.La.1963). *See generally* Brown v. City of Meridian, 356 F.2d 602, 605 (5th Cir. 1966); Lefton v. City of Hattiesburg, Miss., 333 F.2d 280, 284 (5th Cir. 1964); Note, Monitors: A New Equitable Remedy?, 70 Yale L.J. 103 (1960).

19. For a thorough discussion of the problem presented by this case, as well as potential solutions, see Note, The Federal Injunction as a Remedy for Unconstitutional Police Conduct, 78 Yale L.J. 143 (1968), and Comment, Use of § 1983 to Remedy Unconstitutional Police Conduct: Guarding the Guards, 5 Harv.Civ.Rights—Civ.Lib.L.Rev. 104 (1970).

20. In Goode v. Tate, Civ.No. 70–491 (E.D.Pa.), a case involving an alleged pattern of constitutional deprivations by police, the United States District Court for the Eastern District of Pennsylvania received suggestions regarding an appropriate remedy from such non-profit civic groups as the Greater Philadelphia Movement and the Philadelphia Bar Association. We express no opinion on the merits of *Goode*.

21. This dissenting opinion was cited with approval by the Court in Elkins v. United States, 364 U.S. 206, 222–223, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

22. *See, e. g.,* Brinegar v. United States, 338 U.S. 160, 180–181, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (Jackson, J., dissenting); Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966) (en banc); Report of the National Advisory Comm'n on Civil Disorders, 11, 143–44, 299–307 (1968); President's Comm'n on Law Enforcement and Administration of Justice: Task Force Report: The Police, 178–89 (1967); Edwards, Order and Civil Liberties: A Complex Role for the Police, 64 Mich.L.Rev. 47 (1965).

ent with this opinion.[23] The plaintiffs should be given a prompt hearing on their motion for a preliminary injunction.[24]

---

23. On this appeal, it is not necessary to determine whether this case should be permitted to proceed on behalf of, and/or against, members of a class. However, it is noted that the Courts of Appeals have approved flexible methods of decisions on class action issues by the district courts. *See, e. g.*, Ernst & Ernst v. United States District Court, 439 F.2d 1288, 1293 (5th Cir. 1971). We reiterate that there is a strong policy in favor of articulation of findings and reasons for decision on class action issues. Interpace Corp. v. City of Philadelphia, 438 F.2d 401, 404 (3d Cir. 1971).

24. Even the brief testimony of plaintiffs' witnesses which the district court was willing to hear makes clear that some plaintiffs were entitled to relief in the absence of evidence offered by defendants. See, for example, testimony of plaintiff Berman at N.T. 80a–89a. A plaintiff is entitled to the relief required by the evidence "even if the party has not demanded such relief in his pleadings." See F. R.Civ.P. 54(c) ; *see also* Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920, 925–926 (2d Cir. 1968), where the court said :

> " * * * [A] complaint should not be dismissed for legal insufficiency except where there is a failure to state a claim on which *some* relief, not limited by the request in the complaint, can be granted."

See also 6 Moore's Federal Practice § 54.60 (2d Ed. 1966, including 1970 Supplement at p. 86).