Early W. HAIRSTON, Jr., et al.,
Plaintiffs,

v.

Joseph HUTZLER, et al., Defendants.

Civ. A. No. 71–826.

United States District Court,
W. D. Pennsylvania.

Nov. 18, 1971.

———◆———

John B. Leete, Neighborhood Legal Services Assn., Pittsburgh, Pa., for plaintiffs.

Herbert Bennett Conner, of Dickie, McCamey & Chilcote, Pittsburgh, Pa., for Joseph Hutzler, Ronald Parzich, Adam McMeekin and Paul Laukaitis.

Frederick A. Boehm, Asst. City Sol., Pittsburgh, Pa., for Donald Aubrecht, William Kaufman and Robert Pindel.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND PRELIMINARY INJUNCTION

MARSH, Chief Judge.

In this action for injunctive relief brought under the Civil Rights Act, 42 U.S.C. § 1983,[1] fourteen plaintiffs on behalf of themselves and other black persons seek to enjoin seven police officers and a police inspector of the City of Pittsburgh Police Department from continuing the deprivation under color of state law of rights, privileges, and immunities guaranteed by the First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments to the Constitution of the United States.

On motion of the plaintiffs, the Police Inspector, Donald Aubrecht, was dismissed as a defendant.

Affidavits of thirteen of the plaintiffs were attached to the motion for preliminary and permanent injunction. Nineteen affidavits in support of the injunction were filed on September 20, 1971, after the hearing.

The hearing for a preliminary injunction was held on September 16 and 17, 1971.

The defendants, on October 8, 1971, filed an answer asserting, inter alia, that the court lacks jurisdiction of the parties and subject matter; that plaintiffs have an adequate remedy at law; and denying all the factual allegations in the complaint. No counter-affidavits were filed by or on behalf of the defendants.

At the hearing, the plaintiffs produced uncontradicted testimony that the police officers, including six of the defendants, had illegally beaten, arrested, searched and harassed the plaintiffs and other black persons within a period of over nine months, i. e., from November 16, 1970 to and including August 28, 1971.

When the complaint was filed on September 1, 1971, each of the seven defendants was attached to No. 5 police station which services the East Liberty, Homewood and Brushton areas of Pittsburgh. All of the incidents which were testified to in detail took place within those areas.

Subsequent to the filing of the complaint and motion for preliminary and permanent injunction, the seven remaining defendants were transferred to other police stations in Pittsburgh. (See affidavit of Inspector William Moore filed on October 12, 1971.)

■ The court has jurisdiction over the parties and the subject matter under the Civil Rights Act. Throughout this proceeding the plaintiffs have adequately represented the interests of all black persons living in or visiting the City of Pittsburgh.

At the conclusion of the testimony presented by the plaintiffs pertaining to assaults and beatings by the police, counsel represented that plaintiffs' only remaining witness was a police official who had been subpoenaed to produce certain police records, but that he had not yet arrived in court (Tr., pp. 315–316).

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Counsel for defendants agreed to proceed with testimony on behalf of defendants (Tr., p. 319), but when the testimony of the defendant, Robert Pindel, was concluded, the defendants decided to rest without calling any other defendant or witness.[2]

Plaintiffs promptly presented "Proposed Findings of Fact, Conclusions of Law and Order of Court", and two briefs in support of the preliminary injunction. Defendants did not present a brief, but their counsel made an exhaustive argument, a transcript of which was filed of record on November 16, 1971.

At argument counsel indicated that the defendants rested because the court did not have jurisdiction, that the evidence showed that the plaintiffs had adequate remedies at law, and that they had not met their burden of proving that they were entitled to an injunction (Tr., oral argument, pp. 34, 42).

At the hearing plaintiffs presented 20 witnesses, including eight of the named plaintiffs. In their testimony and affidavits, the plaintiffs, their witnesses, and the affiants described many instances of uncalled for and reprehensible police brutality, accompanied by expressions of racism, wherein the defendants engaged in illegal beatings, arrests, searches and harassment of the plaintiffs and other black citizens on the streets, in police vans, and in police station No. 5. Except for the testimony of the defendant, Robert Pindel, none of this evidence was disputed.

The court finds that the defendant, Robert Pindel, did not participate in the beating of Lillie Johnson. The polygraph examinations, to which counsel stipulated, revealed that the witness, Mabel Janet White, was not telling the truth at the trial with regard to her testimony that Officer Pindel kicked her sister, Lillie Johnson; and that the defendant, Robert Pindel, was not untruthful when he denied any knowledge of kicking Lillie Johnson.

Based upon the uncontradicted testimony, the court finds:

1. That Joseph Hutzler, Ronald Parzich, Adam McMeekin, Paul Laukaitis, William Kaufman, and Joseph Figura, acting under color of state law, have engaged in a course of illegal and unconstitutional conduct by using wrongful and excessive physical force upon numerous black citizens in the East Liberty, Homewood and Brushton areas of Pittsburgh, disclosing a pattern of racism. They made illegal arrests and conducted illegal searches of black persons on the streets in said areas. They intimidated and harassed black persons on said streets. They violated the constitutional rights of such black persons.

2. The actions of the aforesaid defendants were directed against black persons with whom the defendants came in contact in the course of their activity as police officers, including many black persons who are not plaintiffs in this action.

3. The plaintiffs and other black persons residing in the City of Pittsburgh have suffered irreparable harm as a result of the unconstitutional actions of the aforementioned six defendants.

4. Injunctive relief is essential to prevent the said defendants from continuing to deprive plaintiffs and other black persons of their constitutional rights.

5. A federal court has the power to enjoin unconstitutional police practices. Lewis v. Kugler, 446 F.2d 1343 (3d Cir. 1971)[3]; Gomez v. Layton, 129 U.S.

---

2. There were seven or eight policemen, including some of the defendants, in the courtroom when the defense rested (Tr., p. 338). Order of proof, especially in a non-jury case, is within the discretion of the court. 89 C.J.S. Trial § 590, p. 375; 88 C.J.S. Trial § 96, p. 206; 6 Wigmore, Evidence, § 1867, p. 498 (3d ed., 1940).

3. In this case at page 1352, the Court of Appeals emphasized the observation of Mr. Justice Brandeis:
"'In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it

App.D.C. 289, 394 F.2d 764 (D.C.Cir. 1968); Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966); Gomez v. Wilson, 323 F.Supp. 87 (D.D.C.1971).

■ 6. Since plaintiffs have established that they are being denied their constitutional rights, they are entitled to injunctive relief, even if state remedies are available. Lewis v. Kugler, *supra.*

■ 7. Plaintiffs do not have an adequate remedy at law. N.A.A.C.P. v. Thompson, 357 F.2d 831, 838 (5th Cir. 1966).

■ 8. This is a valid class action under Rule 23(b) (2) and (3). Notes of Adv. Comm. of Fed.R.Civ.P. 23 (1966 Amendment); Lankford .v. Gelston, *supra.*

9. At the time this action was filed, defendant police officers were all assigned to No. 5 police station and plaintiffs sought equitable relief protecting only the black residents of, and all other persons lawfully in, the area served by No. 5 police station. Since all defendant officers have in the meantime been transferred from No. 5 police station to police stations which serve other areas within Pittsburgh, the class shall include all black residents of and black visitors to the City of Pittsburgh in order to protect all black persons with whom the defendant police officers are likely in the future to have contact. Rule 54(c), Fed.R.Civ. P.; Lewis v. Kugler, *supra,* f.n. 24.

■ 10. The rights of plaintiffs which have been violated by the defendants are constitutionally protected. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Gomez v. Layton, *supra;* Downie v. Powers, 193 F.2d 760 (10th Cir. 1951); Gomez v. Wilson, *supra;* Arroyo v. Walsh, 317 F.Supp.

869 (D.Conn.1970); Nugent v. Sheppard, 318 F.Supp. 314 (N.D.Ind.1970).

11. Plaintiffs' evidence establishes a course of unconstitutional conduct by the said defendants, and since plaintiffs have no adequate remedy at law, injunctive relief is appropriate and essential. Lewis v. Kugler, *supra;* Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969); Gomez v. Layton, *supra;* N.A.A.C.P. v. Thompson, *supra;* Gomez v. Wilson, *supra.*

12. It is clear that with respect to the six defendants their unlawful conduct in violating the constitutional rights of black persons in Pittsburgh possibly may recur.

■ 13. On the basis of plaintiffs' uncontradicted evidence that the aforesaid defendants have engaged as Pittsburgh police officers in a continuing course of conduct which has deprived plaintiffs and other black persons of their constitutional rights, and which conduct possibly may recur, it is the conclusion of this court that a preliminary injunction should issue enjoining said defendant officers from:

a. Stopping, arresting or imprisoning the plaintiffs and other black residents of or visitors to the City of Pittsburgh without adequate cause while they are conducting themselves in a lawful and proper manner;

b. beating and otherwise physically mistreating the plaintiffs and other black residents of or visitors to the City of Pittsburgh while they are conducting themselves in a lawful and proper manner;

c. using wrongful or excessive force while lawfully arresting, subduing, searching or otherwise handling plain-

---

teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face.' [Olmstead v. United States] 277 U.S. [438] at 485, 48 S.Ct. [564] at 575 [72 L.Ed. 944]."

tiffs and other black residents of and visitors to the City of Pittsburgh;

    d.   harassing, threatening or intimidating plaintiffs and other black residents of or visitors to the City of Pittsburgh in violation of their First Amendment rights of speech, assembly and association, and their Fourteenth Amendment rights to equal protection; and

    e.   stopping, seizing and searching plaintiffs and other black residents of or visitors to the City of Pittsburgh on the streets without adequate cause, in violation of their Fourth Amendment rights of freedom from unreasonable seizure, and in violation of their Fifth Amendment rights not to be deprived of liberty without due process of law.