454 F.2d 1362
 24 A.L.R.Fed. 864
 Erna YAFFE and James Hornsby, Plaintiffs-Appellants,
v.
James E. POWERS, as Chief of Police of the Fall River Police
Department and Ronald Andrade, as a Police Officer
in the Fall River Police Department,
Defendants-Appellees.
 No. 71-1269.
 United States Court of Appeals,
First Circuit.
 Heard Dec. 8, 1971.
Decided Jan. 26, 1972.
 
 Matthew H. Feinberg, Boston, Mass., with whom John Reinstein, Cambridge, Mass., Ronald F. Kehoe, C. Michael Malm, and Hausserman, Davison & Shattuck, Boston, Mass., were on brief, for appellants.
 James P. McGuire, Fall River, Mass., with whom McGuire & Collias, Fall River, Mass., was on brief, for appellees.
 Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.
 COFFIN, Circuit Judge.
 
 
 1
 On May 5, 1970, some two hundred citizens attended a memorial service, commencing at the campus of Bristol Community College and terminating at the post office in Fall River, Massachusetts, to protest United States military action in Cambodia and Ohio National Guard action at Kent State University. Prior to this gathering, Fall River authorities had been concerned over the activities of a "Regional Action Group" which they feared to be organizing a violent demonstration along with activists who had taken part in recent riots in other Massachusetts cities. In order to keep track of "the extent of infiltration and participation by known violent activists of the Regional Action Group into the conduct of the . . . memorial services", the Fall River police department sent a police photographer, not in uniform, to take pictures of the activities at the campus and post office.
 
 
 2
 Plaintiff Yaffe, invited by the sponsors to speak as a substitute for her husband who was then running for Congress, and plaintiff Hornsby, a clergyman and member of the Fall River school committee, were among those present who were included in one or more photographs taken. One or more photographs of Hornsby was purportedly displayed in a public area of the Fall River police station for several weeks. A police photograph of a speaker, an alleged member of the Regional Action Group, at the memorial service, and three onlookers, including plaintiff Yaffe, was allegedly given to the Providence Journal and published in connection with a story on "Fall River Radicals", based on defendant Andrade's testimony before the Senate Subcommittee on Internal Security. The testimony related to surveillance of the Regional Action Group prior to a planned march on May 1, 1970-which was called off at the last minute.
 
 
 3
 The plaintiffs brought suit against the Fall River police chief and Sergeant Andrade, alleging that surreptitious police photography, surveillance, the keeping of notes, and the maintaining and circulating of photographs and dossiers on participants at meetings such as that held on May 5, 1970, harass the plaintiffs and deter others from participating in public meetings held to express unconventional views. Plaintiffs seek a declaratory judgment that such surveillance, photographing, maintaining files, and circulating the contents thereof have violated their constitutional rights, and an injunction restraining defendants from taking such actions except "where such actions are necessary for the apprehension of persons who will be charged with specifically defined crimes."
 
 
 4
 The present appeal follows plaintiffs' unsuccessful attempt before the district court to represent as a class "all other individuals who wish to . . . engage, in the City of Fall River, in peaceful political discussion . . . without surveillance and photographing by defendants . . . without becoming the subject of dossiers, reports and files maintained by the defendants, and without any publication by defendants to other persons of the contents of any such dossiers . . .." Plaintiffs, so conceiving their class, immediately sought to initiate extremely broad discovery, encompassing not only any police department file item relating to them as individuals and all notes relating to the May 5, 1970, meeting, but all files, memoranda, notes, etc. "relating in any manner to political protests, demonstrations, rallies or meetings and other so-called 'subversive activities' carried on in the Fall River area during 1969 and 1970 . . . excepting therefrom matter relating directly to the prosecution of any person who has been charged with a crime[,] which charge has resulted in a criminal conviction or is still pending." Both the determination of the class and the scope of the discovery order were the subject of a memorandum and order, prepared by the magistrate and approved by the district court. The court found that the requirements of Rule 23, F.R.Civ.P., had not been fulfilled and ordered discovery accordingly limited to matters directly relating to the named plaintiffs.
 
 
 5
 We have asked for and received briefing on the issue of the appealability of a district court's refusal to recognize a class. Plaintiffs concede that the order was not "final" within the meaning of 28 U.S.C. Sec. 1291 and that there was no certification by the court under 28 U.S.C. Sec. 1292(b), but assert that the district court's action is nonetheless appealable under 28 U.S.C. Sec. 1292(a) (1) as an order "granting, continuing, modifying, refusing or dissolving injunctions . . .." Although the district court did not specifically act with reference to the injunctive relief claimed in the complaint, the substantial effect of its order denying leave to proceed as a class is to narrow considerably the scope of any possible injunctive relief in the event plaintiffs ultimately prevail on the merits. Even if defendants are prohibited from recording, collecting and disseminating information on the named plaintiffs, as well as on others who may be persuaded to intervene, the assumed chilling effect of the continued surveillance of non-parties would reduce the class of persons willing to engage in public exchange of views on controversial subjects to those named in the complaint. Had the district court declined to determine a class provisionally, reserving final decision until more facts were presented, see Rule 23(c) (1), the case would be in a different posture insofar as appealability is concerned. As it is, we hold the district court's order appealable as a denial of the broad injunctive relief sought and proceed to a review of the order on its merits. Brunson v. Board of Trustees, 311 F.2d 107 (4th Cir. 1962), cert. denied, 373 U. S. 933, 83 S.Ct. 1538, 10 L.Ed.2d 690 (1963). Cf. Spangler v. United States, 415 F.2d 1242, 1246-1247 (9th Cir. 1969); Stewart-Warner Corp. v. Westinghouse Electric Corp., 325 F.2d 822, 825-826 (2d Cir.), cert. denied, 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964). See also Note, Interlocutory Appeal from Orders Striking Class Action Allegations, 70 Col.L.Rev. 1292 (1970).
 
 
 6
 In passing on plaintiffs' application for certification of a class, the district court assumed that "all of the requirements of Rule 23 of the Federal Rules of Civil Procedure must be met before an action can be classified as a class action." From this erroneous premise, the court then proceeded to identify three requirements which it felt had not been sufficiently satisfied. First, the court stated that the class which plaintiffs hoped to represent had not been adequately defined. In reaching this conclusion the court compared the class allegation in the complaint, where the relevant class was defined as those "who wish . . . to engage, in the City of Fall River" in various forms of public protest, with that in plaintiffs' supporting memorandum of law, where the putative class we defined as those persons "in the Fall River community who have been similarly subject to police surveillance . . .." This variance, according to the court, left the class inadequately defined since "it is not uncommon" for "the majority of the people attending rallies, indeed if not all" to come from outside the host community. Second, the court felt that as to such an amorphous group of persons there was no assurance of predominating questions of law or fact. The court took judicial notice that "professional demontrators", variously described as "persons who engage in the business of promoting demonstrations or who attend demonstrations for the sake of creating disturbances", often attend mass rallies and as to those persons there would be different questions of fact and different defenses available to the police. Finally, and as a consequence of the two difficulties noted above, the court doubted that a class action was superior to other available methods for the fair and efficient adjudication of the controversy.
 
 
 7
 It is quite understandable that courts, when called on as here to order wideopen discovery in the name of recently refurbished class actions in the relatively new civil rights field, might well take a jaundiced look at the nature and scope of injuries asserted. Yet for a court to refuse to certify a class on the basis of speculation as to the merits of the cause or because of vaguely-perceived management problems is counter to the policy which originally led to the rule, and more especially, to its thoughtful revision, and also to discount too much the power of the court to deal with a class suit flexibly, in response to difficulties as they arise. See Committee's Criticism and Notes to Revised Rule 23, 3B Moore's Federal Practice p23.01- (2d ed. 1969).
 
 
 8
 Had the discretion lodged in the trial court by Rule 23(c) and (d) as to determination of classes and subclasses, conditional orders, imposing conditions, prescribing measures to prevent undue complication, etc., been properly exercised, we would have given its decision weighty deference. Cypress v. Newport News General and Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967). See also 3B Moore's Federal Practice p 23.50, at 1105 (2d ed. 1969). But because of several fundamental legal misconceptions which significantly affected the court's receptiveness to plaintiff's application, much of the available discretion was not exercised and considerations both of judicial efficiency and of ultimate fairness to the parties therefore require us to engage in a rather full review of the proceedings below.
 
 
 9
 The most basic error committed by the district court was in applying the criteria set out in subdivision (b) of Rule 23 cumulatively rather than alternatively. In holding that a class should not be certified because its members had not been sufficiently identified, for example, the court applied standards applicable to a subdivision (b) (3) class rather than to a subdivision (b) (2) class. Although notice to and therefore precise definition of the members of the suggested class are important to certification of a subdivision (b) (3) class, notice to the members of a (b) (2) class is not required and the actual membership of the class need not therefore be precisely delimited. In fact, the conduct complained of is the benchmark for determining whether a subdivision (b) (2) class exists, making it uniquely suited to civil rights actions in which the members of the class are often "incapable of specific enumeration". Committee's Notes to Revised Rule 23, 3B Moore's Federal Practice p 23.01 [10-2] (2d ed. 1969).
 
 
 10
 Similarly, the existence of "predominating" questions and the availability of other methods of resolution which might be superior to a class action are not criteria of a subdivision (b) (2) class, but again of a (b) (3) class, which was not suggested. It may be, as the court indicated, that several questions of law or of pertinent fact are involved here, or as the court did not indicate, that there are no questions of law or of fact common to the class, but only the latter would be grounds for denying class status and even it may require preliminary discovery. To pronounce finally, prior to allowing any discovery, the non-existence of a class or set of subclasses, when their existence may depend on information wholly within defendants' ken, seems precipitate and contrary to the pragmatic spirit of Rule 23.[1] Evidence which might be forthcoming might well shed light on a final decision on this issue. Tatum v. Laird, 444 F.2d 947, 957 n. 21 (D.C. Cir. 1971).
 
 
 11
 The danger of passing on the merits of a claim at the stage when only the existence of a class is at issue,[2] as well as the confusion resulting from the court's speculation as to the status of the members of the putative class rather than its focusing on the effect of the conduct complained of, is made real for us by the court's equating as "professional demonstrators" "those who engage in the business of promoting demonstrations" and those "who attend demonstrations for the sake of creating disturbances". Whatever justification for advance surveillance could rightly apply to the latter, see Anderson v. Sills, 56 N.J. 210, 265 A.2d 678 (1970), might not be at all appropriate for the former, which would include Quakers planning gentle anti-war vigils.
 
 
 12
 We have said enough to reveal our conviction that the court's refusal to recognize a class action was based in significant part upon its failure to recognize both the obligations and opportunities of Rule 23. This, however, is not to say that we have enough grasp of the interests of the putative class as they may be defined by the actions of the defendants to declare and define the class ourselves and, as plaintiffs pray, order discovery proceedings to commence in accordance with such determination. Such a declaration and the attendant consequences should not ordinarily stem from a reviewing court. The genius of Rule 23 is that the trial judge is invested with both obligations and a wide spectrum of means to meet those obligations. See, e. g., Baxter v. Savannah Sugar Refining Corporation, 46 F.R.D. 56, 60 (S.D.Ga.1969). An appellate court is not well situated to umpire an entire ball game.
 
 
 13
 We therefore conclude that the issue of the existence of a class must be reopened by the district court. A decision to declare the existence or non-existence of a class (or subclass) need not necessarily be made at this stage of the proceedings. But progress toward resolving the class definition issue would seem to require some discovery, under such terms as the court may see fit to impose, of the extent of, say, the practice of the police photographing and making such photographs available to others. Since a rule 23(b) (2) class is defined by the actions which a defendant has taken toward the class, and which should arguably be enjoined, it may appear sensible to ascertain the nature of the actions taken with more precision than reference to pleadings and affidavits permits. While what we have said implies somewhat more initial discovery than that limited to information concerning the two plaintiffs, we do not imply that, prior at least to a definitive determination of a class, the entire police files over a substantial period be produced for adversary examination. Not only may there be sensible limits as to time and type of occasion, but as to materials said to be irrelevant or to involve potential harm to others the court may undertake an in camera inspection. Cf. Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); Palermo v. United States, 360 U.S. 343, 354, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). From our entire discussion it should also be apparent that, if a class action is to be managed with sensitivity both to plaintiffs' reasonable demands and to defendants' responsibilities, the district judge must keep close to the heart of the litigation. Delegations of discrete chores to a magistrate must not be permitted to cause the judge to lose the feel of the pulse of the proceedings.
 
 
 14
 Our purpose is not to chart the future of this litigation, but to indicate that there are certain standards governing the recognition of a class; that the burden of administering this kind of a class suit should not be pessimistically estimated; and that in the wise use of the power to determine when, how, and for how long, and subject to what conditions in the interest of minimizing evidentiary complexities a class should be recognized the special responsibility and opportunity of a federal trial court. At this juncture, unless a claim is patently frivolous, that court should ask itself: assuming there are important rights at stake, what is the most sensible approach to the class determination issue which can enable the litigation to go forward with maximum effectiveness from the viewpoint of judicial administration?
 
 
 15
 Reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 That a viable class is not beyond conjecture is illustrated by a somewhat analogous situation in Broughton v. Brewer, 298 F.Supp. 260, 267 (N.D.Ala.1969) ["persons whose poverty or lack of apparent means of livelihood renders them susceptible to arrest under the present Alabama vagrancy laws, and against whom the vagrancy laws have been or may be applied to repress constitutionally protected rights of free expression"], and in Hairston v. Hutzler, 334 F.Supp. 251 (W.D.Pa.1971) [all black persons living in or visiting Pittsburgh who have been or may be injured by a pattern of police harassment and intimidation]. We add that our conjecture does not necessarily imply our endorsement, particularly when such would be premature
 
 
 [2]
 We are mindful of Judge Weinstein's approach in Dolgow v. Anderson, 43 F. R.D. 472, 501-503 (E.D.N.Y.1968), rev'd on other grounds, 438 F.2d 825 (2d Cir. 1971), in requiring, prior to determining a class, that there be a substantial possibility of prevailing on the merits, but are dissuaded from adding this requirement, particularly in civil rights cases, by the observations of Judge Tyler in Fogel v. Wolfgang, 47 F.R.D. 213, 215 n. 4 (S.D.N.Y.1969). See also Katz v. Carte Blanche Corporation, 52 F.R.D. 510, 513-514 (W.D.Pa.1971)