**John W. REED et al., Plaintiffs-Appellants,**

**Grant Cooper et al., Intervenors-**

**Appellants,**

**v.**

**Clarence GIARRUSSO et al., Defendants-Appellees.**

**No. 71-2676.**

United States Court of Appeals, Fifth Circuit.

June 26, 1972.

Rehearing Denied Aug. 22, 1972.

John W. Reed, pro se; Robert Glass, New Orleans, La., for appellants.

Phillip S. Brooks, Asst. City Atty., New Orleans, La., Charles R. Maloney, New Orleans, La., for defendants-appellees.

Before WISDOM, GOLDBERG, and CLARK, Circuit Judges.

WISDOM, Circuit Judge.

The plaintiffs-appellants challenge the constitutionality of various New Orleans municipal ordinances. Jurisdiction of this Court is based on 28 U.S.C. § 1292(a) (1). The plaintiffs assert the violation of their civil rights under Section 1983. The district court, relying on Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696, dismissed the suit on the ground that the litigants lacked standing. The allegations of the complaint, accepted as true, bring the plaintiffs within the standing requirements defined in Younger v. Harris. *See* 401 U.S. at 41–42, 91 S.Ct. 746. The district court failed to separate the question of standing to sue from the question of the right to federal relief. We reverse and remand the cause to the district court for a hearing on the merits.

The bizarre aspect of this case is that one of the plaintiffs, John Reed, appears to have been arrested for talking with a client's witness and others while the witness was being interrogated by a police officer in the corridor of a courthouse.

Reed is an attorney employed by the New Orleans Legal Assistance Corporation, a federally funded legal services program. On May 29, 1970, he was in the hallway of the New Orleans Municipal Courts Building waiting for the commencement of a trial. Reed observed Ronald Nunez, a member of the New Orleans Police Department and the charging officer in the impending case against his client, approach a group of five persons, including Reed's client, a witness for Reed's client, and plaintiffs-appellants Jones, Cook, and Cloud. Officer Nunez pulled a plastic bush-comb from Cloud's pocket and began questioning Cloud about the comb. Bush-combs are large combs commonly used by black men and women to groom Afro hairstyles. Reed approached the group and inquired as to the nature of the interrogation. A discussion followed, and Officer Nunez arrested Reed and three members of the group, Jones, Cook, and Cloud. Reed was charged with obstructing a police officer in violation of New Orleans Municipal Ordinance 49–6.[1] Jones, Cook, and Cloud were each charged with carrying a dangerous weapon in violation of New Orleans Municipal Ordinance 67–2.[2] The "dangerous weapons" were bush-combs. This is not as bizarre as it might seem, in that some of these combs are of metal, the teeth of which might be sharpened, and others are made of a hard plastic which could cause raking wounds. But this is true of many useful toilet accessories, including the not-forgotten hatpin.

On June 23, 1970, while prosecutions against them were pending in New Orleans Municipal Court, Reed, Jones, Cook,

---

1. It shall be unlawful and shall be considered a breach of the peace for any person willfully to obstruct, hinder or unlawfully interfere with any member of the city police while in the performance of his duty.
   New Orleans Municipal Ordinance 49–6.

2. Illegal carrying of weapons is:
   (1) The intentional concealment of any firearm or other instrumentality, customarily used or intended for use as a dangerous weapon, on one's person, or
   (2) The intentional concealment of any object or instrumentality which could or might be used as a dangerous weapon, on one's person.
   Whoever commits the offense of illegally carrying weapons shall be fined not more than one hundred dollars or imprisoned for not more than ninety days, or both such fine and imprisonment.
   New Orleans Municipal Ordinance 67–2.

and Cloud filed class actions in the United States District Court for the Eastern District of Louisiana, against the Superintendent of Police for the City of New Orleans, the City Attorney for the City of New Orleans, and Officer Nunez. The complaint alleged that the municipal ordinances under which Reed, Jones, Cook, and Cloud were being prosecuted are unconstitutional on their face and as applied.[3] They alleged that the arrests were part of a "pattern and practice" of "intimidation, humiliation, harassment and unlawful arrest . . . done in utter bad faith for the purpose of and with the effect of punishiug the plaintiffs and members of their class for the exercise of rights secured to them by . . . the Constitution of the United States". The plaintiffs asked for injunctive relief against present and future arrests and prosecutions under the ordinances, declaratory relief, and damages.

During September and October of 1970, the charges against Reed, Jones, Cook, and Cloud in New Orleans Municipal Court were dropped by the City Attorney. The plaintiffs amended their complaint to reflect this fact. In the amended complaint, Reed alleged: "[b]ecause [he] . . . is an attorney for the New Orleans Legal Assistance Corporation, his clients are most often poor individuals who are members of the New Orleans black community. He often has occasion to be with, talk with and travel with his clients in the community. . . . Plaintiff Reed, both as an attorney on behalf of his clients, and as a private citizen, intends to continue to peacefully and legally speak to, suggest to and criticize members of the New Orleans Police Department who are acting illegally and/or unconstitutionally in the performance of their official duties". Jones, Cook, and Cloud alleged that "as black citizens of the City of New Orleans, [they] intend to contin-

ue to carry the combs". Thus, all were in "fear of future arrests or threats of arrest, and prosecutions in the New Orleans Municipal Court" under the challenged ordinances.

Meanwhile, on November 19, 1970, intervenor-appellant Grant Cooper, a minor, was arrested while picketing in the plaza in front of the New Orleans Police Administration Building. Cooper was arrested by Officers Weysham and Bethany for carrying a dangerous weapon, a metal pipe eighteen inches in length, in violation of New Orleans Municipal Ordinance 67–2 (see footnote 2), and for disturbing the peace in violation of New Orleans Municipal Ordinance 42–22.[4]

While the prosecutions were pending against him, Cooper filed a motion to intervene in the federal court suit previously filed by Reed, Jones, Cook, and Cloud. The motion was granted on December 16, 1970. Cooper's complaint in intervention also challenged the constitutionality of the New Orleans Municipal Ordinances on their face and as applied. He alleged that the arrests and prosecution under the ordinances were "malicious, without probable cause, in bad faith, and for the purpose and with the effect of, interfering with protected First Amendment activities, and with no ultimate chance of success in prosecution". Cooper asked for injunctive relief, declaratory relief, and damages.

On March 3, 1971, the charges in New Orleans Municipal Court against Cooper were dismissed for failure of Officers Weysham and Bethany to appear as witnesses. On March 26, 1971, Cooper amended his complaint in federal court to reflect this fact. He alleged that he "intends to continue to participate in peaceful demonstrations critical of the New Orleans Police Department, and in other political demonstrations in New Orleans, as he has done in the past. He also intends to carry various inherently

---

3. The plaintiffs alleged that the New Orleans Ordinances 828 M.C.S. 49–6 and 828 M.C.S. 67–2 were vague, overbroad, and denied equal protection and due process.

4. No person shall make a violent noise or create a disturbance or offense against the public peace by intoxication or otherwise.
New Orleans Municipal Ordinance 42–22.

innocent objects on his person to these demonstrations, which objects, although not 'dangerous weapons' under Louisiana State law, 'could be used as . . . dangerous weapons' within the meaning of Municipal Code, Section 67–2." As a result, Cooper alleged that he "fears future arrest, or threat of arrest and prosecution in the New Orleans Municipal Courts, under Sections 42–22 and 67–2 of the New Orleans Municipal Code, for his intended course of future conduct." On the same day, Officers Weysham and Bethany filed new charges [5] against Cooper under New Orleans Municipal Ordinances 42–22 (see footnote 4) and 67–3.[6] These charges are presently pending in New Orleans Municipal Court.

The defendants filed a motion to dismiss the federal suit, and, on May 21, 1971, the district court granted the motion and dismissed the suit as to injunctive and declaratory relief. The claims for damages are still pending in the district court.

The district court, citing Younger v. Harris and Boyle v. Landry,[7] dismissed the suit because the plaintiffs lacked standing to maintain the suit.[8] We hold

---

5. The charges were renewals of the charges previously dismissed for failure of Officers Weysham and Bethany to appear. Cooper was charged under Section 67–3 (see footnote 6) rather than Section 67–2 (see footnote 2) because the pipe he was carrying was not concealed.

6. It shall be unlawful for any person to carry a dangerous weapon, concealed or otherwise, into any public hall, tavern, picnic ground, place for shows or exhibitions or house or other place of public entertainment or amusement.
New Orleans Municipal Ordinance 67–3.

7. Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696. See also Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Byrne v. Karalexis, 1971, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed. 792; Perez v. Ledesma, 1971, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Dyson v. Stein, 1971, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781.

8. The district court's order of dismissal reads in part:
There is no allegation in the present case that the plaintiffs' arrests were but one of a series of repeated prosecutions to which they would be subjected. They only alleged the speculative possibility of a future arrest. There is no allegation of a present danger of a sole prosecution which could not be adequately defended by the plaintiffs.

\* \* \* \* \*

In the present case, there are no present prosecutions pending against the plaintiffs. The Supreme Court in Boyle v. Landry, 39 L.W. 4207 [401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696], held:

"As to these plaintiffs without matters pending in the state courts, there were no facts alleged in the complaint showing that any of those plaintiffs were threatened with prosecution under any of the challenged statutes, or that they would suffer any irreparable injury if they were required to defend any prosecution that might be brought against them in state court."
The order also contains language about the limits on federal injunctive relief against pending state court prosecutions discussed in *Younger* and its companion cases.
The Supreme Court in Younger v. Harris, *supra*, further indicated that the procedure apparently contemplated in Dombrowski for testing the constitutionality of a statute "on its face" is fundamentally at odds with the function of the Federal Courts in our constitutional plan. The Court in so saying took a noticeable back step and noted that "the power and duty of the judiciary to declare laws unconstitutional is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision." (p. 4205 [401 U.S. p. 52, 91 S.Ct. p. 754]) The inference is inescapable, that the declaratory judgment is reserved for unusual situations such as Dombrowski.

\* \* \* \* \*

There must be a showing that they would suffer an irreparable loss which is both great and immediate if they had to defend against a single prosecution. In the present case, there is no showing that the plaintiffs are threatened with a future prosecution, or that they were harassed, or that this is one of a series of arrests, and the most im-

that they possess the requisite standing to maintain this suit.

As to Reed, Jones, Cook, and Cloud, prosecutions were pending against them at the time the federal suit was filed. Later, the charges were dropped. We must determine whether, at the time of the hearing below, the plaintiffs possessed the requisite standing. *See* Younger v. Harris, *supra;* Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444; Golden v. Zwickler, 1969, 394 U.S. 103, 89 S.Ct. 956, 22 L. Ed.2d 113. At that time they had been arrested under the ordinances, and prosecutions had been commenced. Although the prosecutions were dropped, there is nothing in the record to indicate that this was done because the arrests and prosecutions were deviations from the policies and practices of the New Orleans Police Department or because corrective measures had been taken to insure that similar arrests and prosecutions would not occur. In fact, the affidavits submitted to the district court indicate that similar arrests and prosecutions under the ordinances are currently occurring and will occur in the future. The complaint alleging that the plaintiffs will continue to engage in the conduct which led to their arrest and prosecution earlier, when viewed in the context of previous arrests, current arrests, and the future promise of arrests, make reasonable their fear of "future arrest, or threat of arrest, and prosecution". As a result, the plaintiffs, assuming that their allegations are true, as we must for purposes of reviewing a motion to dismiss, have standing to maintain the present suit.

In Younger v. Harris, *supra*, the Supreme Court held that Dan, Hirsch, and Broslawsky did not have standing to challenge the California statute at issue in that case. The Court said:

Appellee Harris has been indicted, and was actually being prosecuted by California for a violation of its Criminal Syndicalism Act at the time this suit was filed. He thus has an acute, live controversy with the State and its prosecutor. But none of the other parties plaintiff in the District Court, Dan, Hirsch, or Broslawsky, has such a controversy. None has been indicted, arrested, or even threatened by the prosecutor. . . . Whatever right Harris, who is being prosecuted under the state syndicalism law may have, Dan, Hirsch, and Broslawsky cannot share it with him. If these three had alleged that they would be prosecuted for the conduct they planned to engage in, and if the District Court had found this allegation to be true—either on the admission of the State's district attorney or on any other evidence—then a genuine controversy might be said to exist. But here appellees Dan, Hirsch, and Broslawsky do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible. They claim the right to bring this suit solely because, in the language of their complaint, they "feel inhibited". We do not think this allegation even if true, is sufficient to bring the equitable jurisdiction of the federal courts into play to enjoin a pending state prosecution. A federal lawsuit to stop a prosecution in a state court is a serious matter. And persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases. *See* Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). Since Harris is actually being prosecuted under the challenged laws, however, we proceed with him as a proper party.

401 U.S. at 41–42, 91 S.Ct. at 749.

■ Unlike appellees Dan, Hirsch, and Broslawsky in *Younger*, the plaintiffs Reed, Jones, Cook, and Cloud in the present case have been arrested. Al-

portant ingredient is that there is no showing that the plaintiffs would suf-

fer an irreparable loss which is great and immediate.

though the prosecutions were later dropped, they have alleged that they will continue to engage in conduct which brought about their first arrest and that they fear future arrests and prosecutions. These fears are apparently well-founded, as the defendants have reaffirmed their intention to continue arrests for similar conduct. In these circumstances, standing exists.[9] See Younger v. Harris, supra; Baggett v. Bullitt, 1964, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377; Kirkland v. Wallace, 5 Cir. 1968, 403 F.2d 413; Baldwin v. Morgan, 5 Cir. 1958, 251 F.2d 780.

As to Cooper, a prosecution under New Orleans Municipal Ordinance 42–22 is presently pending. Cooper, therefore, like appellee Harris in Younger, has standing to maintain his suit challenging the ordinance. Although the charges against Cooper under New Orleans Municipal Ordinance 67–2 have been dropped, he alleges that he will continue to engage in the conduct which led to his initial arrest and that he fears future arrest and prosecution. The affidavits confirm his fears. Standing is thus established.

Because we hold that the district court was incorrect in dismissing this case on the plaintiffs' lack of standing, we must remand the case to the district court for consideration on the merits. We do not, as the parties urge us to do, address ourselves to the propriety of that portion of the district court's opinion (see footnote 8) dealing with the availability of federal relief and the standard to be applied to determine whether federal relief is available. The district court did not, as we read its opinion, address itself, much less irrevocably commit itself, to a standard to be applied to determine whether comity restrictions prevent federal injunctive or declaratory relief. As we see it, the district court considered that standing should be equated with the availability of relief. For us to expound on the applicability of Younger and its companion cases to the present case would be to render a premature, advisory opinion.

We note that the complaint, as discussed above, makes allegations which, if proved, would entitle them to relief even under the stringent standards of Younger. Younger requires, for federal injunctive relief against a pending state criminal prosecution, a showing of "irreparable injury". The irreparable injury may, of course, be established by a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." 401 U.S. at 54, 91 S.Ct. at 755. In the present case, the appellants alleged bad faith, harassment, and other grounds of irreparable injury. They are entitled to a hearing on these allegations. See Younger v. Harris, supra; Dyson v. Stein, supra; Sheridan v. Garrison, 5 Cir. 1969, 415 F.2d 699; Dawkins v. Green, 5 Cir. 1969, 412 F.2d 644; see also Gornto v. Thomas, 5 Cir. 1971, 439 F.2d 1406; Peoples v. City of Birmingham, 5 Cir. 1971, 440 F.2d 1352; Star-Satellite v. Rosetti, 5 Cir. 1971, 441 F.2d 650; Buie v. Pigott, 5 Cir. 1971, 439 F.2d 153.

9. In Boyle v. Landry, supra, the Supreme Court said:

It is obvious that the allegations of the complaint in this case fall far short of showing any irreparable injury from threats or actual prosecutions under the intimidation statute or from any other conduct by state or city officials. Not a single one of the citizens who brought this action had ever been prosecuted, charged, or even arrested under the particular intimidation statute which the court below held unconstitutional. All the charges of the complaint deal broadly and generally with all the state statutes and city ordinances that the appellees originally challenged. In fact, the complaint contains no mention of any specific threat by any officer or official of Chicago, Cook County, or the State of Illinois to arrest or prosecute any one or more of the plaintiffs under that statute either one time or many times.

401 U.S. at 80–81, 91 S.Ct. at 760. As discussed above, the present case is clearly distinguishable.

The district court's dismissal of the case is reversed and the case is remanded to the district court for a hearing on the merits.