**Kenneth OLDROYD et al., Plaintiffs,**

**v.**

**George F. KUGLER, Jr., Attorney General and Chief Prosecutor of the State of New Jersey, et al., Defendants.**

**Civ. A. No. 1002–70.**

United States District Court, D. New Jersey, C. D.

Dec. 21, 1972.

As Amended Jan. 30, 1973.

Norman L. Cantor, Newark, N. J., Lawrence N. Le Vine, Hackensack, N. J., Arthur H. Miller, New Brunswick, N. J., for plaintiffs; Stephen M. Nagler, American Civil Liberties Union, New York, N. Y., of counsel.

Fred H. Kumpf, Dept. of Law & Public Safety, Div. of Crim. Justice, Appellate Section, East Orange, N. J., for defendants.

Before McLAUGHLIN, Circuit Judge, and COHEN, and GARTH, District Judges.

OPINION

GARTH, District Judge:

Plaintiffs Kenneth Oldroyd, John Joseph, Alan Medvin, Stephen Oppenheimer, Claudia Slovinsky and Lionel Cuffie on July 27, 1970 filed this action on behalf of themselves and the class of persons similarly situated. Defendants are New Jersey Attorney General George F. Kugler, Jr., various named county prosecutors as representatives of the class of New Jersey prosecutors, and a police officer. Plaintiffs alleged the unconstitutionality of N.J.S. 2A:107-2 [1] on the First Amendment grounds of vagueness and overbreadth, and requested conven-

1. N.J.S. 2A:107-2 reads as follows:
"Any person who publicly mutilates, tramples upon or otherwise defaces or defiles any flag, standard, color or ensign of the United States or state flag of his state, whether the same be public or private property, is guilty of a misdemeanor."

ing of a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284, as well as declaratory and injunctive relief.

## PROCEEDINGS

On August 18, 1970 a three-judge court consisting of Circuit Judge McLaughlin and District Judges Wortendyke and Cohen was convened. That court issued a memorandum order on December 17, 1970, D.C., 327 F.Supp. 176, dismissing the complaint for lack of a substantial federal question, and finding the statute "on it face . . . [to be] precise, clear and constitutional." The Court of Appeals, 3 Cir., 461 F.2d 535, reversed on June 2, 1972, holding that plaintiffs' complaint and affidavits do raise a substantial federal question, and remanded for a decision on the merits. The Court of Appeals stated that except for the issue of jurisdiction, "[a]ll other issues are left to the disposition of the Three-Judge Court upon remand."

Judge Wortendyke having retired, District Judge Garth took his place on this court. A new affidavit was requested of and filed by plaintiffs, bringing up to date the facts as to their status. The issues having been completely briefed by all parties, there appears no necessity for another hearing.

## STANDING

The jurisdiction of federal courts being constitutionally restricted by Article III of the Constitution to "cases" and "controversies," this court must initially look to the standing of each plaintiff. "The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968);

Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

In Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), a defendant in a criminal case after indictment was held to have "an acute, live controversy with the State and its prosecutor" in an action to declare unconstitutional the state statute under which the indictment was brought. However, three other parties who "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible," were held not to have standing. 401 U.S. at 42, 91 S.Ct. at 749. The Supreme Court has held that "[b]ecause of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights." Dombrowski v. Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965). However, it is not enough that the parties plaintiff claim to "feel inhibited" in the exercise of First Amendment rights. As the Supreme Court held in Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm. . . ." See also Younger v. Harris, supra, 401 U.S. at 37, 91 S.Ct. at 746.

In the instant case, plaintiff Oldroyd "wore pants with several white stars sewn on them and a red and white striped sach," and was arrested in Seaside Heights on May 31, 1970 and charged with violating N.J.S. 2A:107-2. A hearing scheduled for July 27, 1970 was postponed, pending the outcome of this case.

Plaintiff Joseph on May 6, 1970 "flew his flag in front of his house in an inverted position with a red cloth, symbolic of blood, flying below," and alleges that he "was intimidated . . . when a magistrate remanded [his] case to a Bergen County Grand Jury" for possible

action under N.J.S. 2A:107–2. Action on an indictment returned January 21, 1971 has been postponed pending the outcome of this case.

Plaintiff Medvin displayed "a small replica of the United States flag, upside down, in a window of his automobile." Medvin asserts he was stopped in August 1970 by a Franklin Township policeman who saw the decal and who told Medvin to remove it, or else he would arrest Medvin the next time he saw him. Alleging fear of arrest and further incidents, Medvin later removed the decal.

Plaintiff Oppenheimer "displayed in the window of his automobile a decal representing a United States flag with a peace symbol superimposed on the stars and stripes," was arrested in Bronx County, New York for the display, and "fears similar arrest and prosecution under N.J.S. 2A:107–2."

Plaintiff Slovinsky "joined with fellow students in painting a representation of a United States flag, upside down, on their window in the Katzenbach Dormitory at Douglas College" in New Brunswick, and was informed by her counselor-in-residence that two law enforcement officers had advised the counselor "that to defile a United States flag in any way was against the law of the State of New Jersey." Alleging fear of arrest and prosecution under N.J.S. 2A:107–2, Slovinsky then had the flag removed.

Plaintiff Cuffie "carried an upside down flag pinned to the back of his shirt," was arrested in New Brunswick for violating N.J.S. 2A:107–2 on April 15, 1970 and alleges that at the time of filing this action, his criminal case was pending before the Middlesex County Grand Jury. He was indicted on February 18, 1972, and was found not guilty in a trial without a jury on May 22, 1972.[2]

■ Although we must abstain in the cases of Oldroyd, Cuffie and Joseph on the grounds of Younger v. Harris, *supra*, to be discussed below, we find that plaintiffs Oldroyd and Cuffie have standing, since they had already been arrested at the time the instant action was filed. Plaintiff Joseph also has standing, since his case was pending before the Grand Jury and he "was actually being prosecuted . . . ." 401 U.S. at 41, 91 S.Ct. 746.

■ Plaintiff Oppenheimer, on the other hand, alleges "no fears of state prosecution except those that are imaginary or speculative," 401 U.S. at 42, 91 S.Ct. at 749, and in their reply brief plaintiffs concede that Oppenheimer lack standing. We agree, and therefore omit Oppenheimer from all further discussion below.

The question of standing with regard to Medvin and Slovinsky is much more difficult, because they allege various actions on the part of law enforcement officers short of arrest or indictment that give rise to their fears of prosecution. There is no allegation of a pattern of enforcement of the challenged statute, or of any plaintiff's knowing of the "fear" or arrest of any other plaintiff. *Cf.* Cine-Com Theatres Eastern States, Inc. v. Lordi, 351 F.Supp. 42 (D.N.J. 1972); Lido East Theatre Corp. v. Murphy, 337 F.Supp. 1345 (S.D.N.Y. 1972). Plaintiffs rely upon Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 507–508, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972) and Wulp v. Corcoran, 454 F.2d 826 (1st Cir. 1972). Though we think these cases distinguishable on the grounds that in *Lake Carriers* state authorities coerced costly affirmative acts of compliance with the challenged state statute, and that in *Wulp* police officers actually halted the distribution of printed material by certain plaintiffs, we have difficulty distinguishing Police Dept. of the City of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). We are therefore willing to assume, with-

2. We need not reach the question of whether Cuffie's acquittal moots his case here, because we must in any event abstain for reasons discussed below.

out deciding, that plaintiffs Medvin and Slovinsky have standing here.

We do decide, however, that this action is not maintainable under Rule 23 of the Federal Rules of Civil Procedure as a class action. Under Younger v. Harris, *supra*, the class would have to consist solely of those persons whose fear of prosecution under N.J.S. 2A:107–2 was more than imaginary or speculative. Members of the class would have to be able to claim specific present harm, or a threat of specific future harm. Such a "class" is incapable of delineation, as required by Rule 23. *See* 3B J. Moore Federal Practice ¶ 23.04. Furthermore, it will become apparent below that we are called upon to adjudge the constitutionality of the state statute only with regard to inverted United States flags, or representations thereof. The prerequisites of Rule 23(a) with regard to numerosity, commonality of issues of law and/or fact, and representativeness of claims and defenses therefore cannot be met as to the classes asserted to exist by plaintiffs in their complaint.

## ABSTENTION

Having determined the issue of standing, we turn to questions of abstention arising under Younger v. Harris, *supra*, and Railroad Commission v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Younger* held "that the possible unconstitutionality of a [state] statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it," 401 U.S. at 54, 91 S.Ct. at 755; rather, principles of comity require that federal courts not interfere with pending state criminal prosecutions. The injury that plaintiffs face in the instant action is no different from "that incidental to every criminal proceeding brought lawfully and in good faith." 401 U.S. at 49, 91 S.Ct. at 753; Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). We do not find the irreparable injury to plaintiffs or the bad faith attempts of enforcement by defendants that must

obtain before we may hold *Younger* inapplicable. 401 U.S. at 46, 53, 91 S.Ct. 746. *Cf.* Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Nor may we issue declaratory relief where there is a pending state prosecution. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

Plaintiffs argue that *Younger* and the companion cases decided by the Supreme Court the same day apply only to post-indictment situations. We think this argument misses the thrust of the principle of abstention promulgated in *Younger*. The Supreme Court discussed in considerable detail the "long standing public policy against federal court interference with state court proceedings." 401 U.S. at 43–54, 91 S.Ct. at 750. In this circuit, Lewis v. Kugler, 446 F.2d 1343, 1348 (3d Cir. 1971) held *Younger* to bar declaratory judgment as to "searches and seizures forming the bases of the state criminal proceedings pending . . . ", and Burak v. Pennsylvania, 339 F.Supp. 534, 536 (E.D.Pa.1972) (three-judge court) held that a prosecution commenced by a criminal complaint, rather than by indictment, also fell within the confines of *Younger*. As the court in *Burak* stated:

"We do not find it likely, in view of the disparity involved in state criminal prosecutions, that the Supreme Court meant to enunciate a rigid rule concerning the commencement of state criminal prosecutions."

339 F.Supp. at 536.

The rationale of *Younger* compels us to hold that with respect to the doctrine of abstention an arrest is part of a pending state prosecution under *Younger*. We therefore conclude that abstention is appropriate in the cases of plaintiffs Oldroyd, Joseph and Cuffie.

With regard to Medvin and Slovinsky, against whom state criminal prosecutions are not pending, neither *Younger* nor the principles enunciated therein requires

our abstention. Lewis v. Kugler, *supra*, 446 F.2d at 1349.

■ Assuming as we do that Medvin and Slovinsky have the requisite standing, we proceed to the question of abstention under the *Pullman* doctrine. As restated in Zwickler v. Koota, 389 U.S. 241, 248–249, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1968), that doctrine requires federal courts to decline jurisdiction under "special circumstances," such as "the susceptibility of a state statute of a construction by the state courts that would avoid or modify the constitutional question." We recognize that especially in a case involving the alleged unconstitutionality on its face of a state statute, on the First Amendment grounds of vagueness and overbreadth, "abstention cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim." Zwickler v. Koota, *supra*, at 251–252, 88 S.Ct. at 397. Indeed, the New Jersey courts have had one opportunity, long before the modern development of the First Amendment, to interpret the statute herein involved. In State v. Schleuter, 127 N.J.L. 496, 23 A.2d 249 (1941), the State Supreme Court held "that the statute, in making it a misdemeanor to deface or to defile the flag, used the words in their meaning of 'dishonor,'" which dishonor must be

purposeful. We recognize further, however, that here we are not confronted with claims by plaintiffs capable of resolution only by "piecemeal adjudication in many courts," *cf.* Baggett v. Bullitt, 377 U.S. 360, 375–379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); rather, even were we to accept plaintiffs' arguments as to constitutional infirmity, we are faced with a situation where a "readily apparent construction suggests itself as a vehicle for rehabilitating the [statute] in a single prosecution," *cf.* Dombrowski v. Pfister, *supra*, 380 U.S. at 491, 85 S.Ct. at 1123. Very simply, a state court can hold, as defendants urge here, that the activity of Medvin and Slovinsky, the only plaintiffs with standing for whom we need not abstain on *Younger* grounds —displaying or representing the flag in an inverted position [3]—is exempted from punishment by N.J.S. 2A:107–4.[4] Such a construction would not do violence to the plain language of the statute, *cf.* Welsh v. United States, 398 U.S. 333, 347, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) (Harlan, J., concurring), since federal statutes permit the flag to be flown upside down as a "signal of dire distress."[5] 36 U.S.C. § 176(a). Were N.J.S. 2A:107–4 inapposite, a state court might still hold this activity without the scope of N.J.S. 2A:107–2.[6] *See,*

3. In this regard, it should be noted that Cuffie was acquitted for somewhat similar conduct, though the record here is silent as to the reasons underlying the acquittal.

4. N.J.S. 2A:107–4 reads as follows:
"This chapter shall not apply to any act permitted by the statutes of the United States, or by the United States army, navy or air force regulations, nor shall it be construed to apply to a newspaper, periodical, book, pamphlet, circular, certificate, diploma, warrant or commission of appointment to office, ornamental picture, or stationery used in correspondence, on any of which shall be printed, painted or placed such flag, standard, color or ensign disconnected from any advertisement."

5. Defendants' brief (at p. 8) assumes that Medvin's decal contained a "piece symbol"

superimposed upon the inverted flag. The record, however, is devoid of mention of a peace symbol. *See* note 6 *infra.*

6. Assuming Medvin's flag to have a superimposed peace symbol, as do defendants, *see* note 5 *supra*, it is quite possible that Medvin's activity is covered not by N.J.S. 2A:107–2, but rather by N.J.S. 2A:107–1, which reads as follows:
"Any person who, for exhibition or display, places, appends, annexes, or affixes, or causes to be placed, appended, annexed or affixed, to or upon any flag, standard, color or ensign of the United States or state flag of this state, any inscription, design, device, symbol, name, advertisement, words, characters, marks, notice or token of any nature whatever, or who displays or exhibits or causes to be displayed or exhibited any such flag, standard, color or ensign upon which shall in any manner be placed,

*e. g.*, Hoffman v. United States, 144 U.S. App.D.C. 156, 445 F.2d 226 (1971).

## CONCLUSION

A federal court "ordinarily accepts the construction given a state statute in the local courts and also presumes that the statute will be construed in such a way as to avoid the constitutional question presented." Baggett v. Bullitt, *supra,* 377 U.S. at 375, 84 S.Ct. at 1324. Where "questions of state law are enmeshed with federal questions," abstention is particularly desirable. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed. 2d 68 (1970).

In Harrison v. N. A. A. C. P., 360 U.S. 167, 177, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959), which also involved a question of whether the statute in question even applied to the parties challenging it, the court held abstention appropriate. Pursuant to the decision of the Supreme Court in American Trial Lawyers Ass'n, New Jersey Branch v. New Jersey Supreme Court (No. 72–691 decided Jan. 15, 1973), we retain jurisdiction, but stay all proceedings in this court pending the determination of the issues of state law in the courts of New Jersey, or until all efforts to obtain such a determination have been exhausted.

We express no opinion upon the merits, other than necessary to decide the issue of abstention in the cases of Medvin and Slovinsky.

McLAUGHLIN, C. J., concurs in the result.

---

attached, annexed or affixed any such inscription, design, device, symbol, name, advertisement, words, characters, marks, notice or token, is guilty of a misdemeanor."

Despite the title of the above statute— "Use of state or national flag for advertising"—the statute itself is not limited to advertising. *See* State v. Zimmelman, 118 N.J.Super 345, 287 A.2d 474 (N.J.Super.1972). For reasons stated herein, and assuming Medvin's flag to have a peace symbol, we think it appropriate for the state courts to determine whether the conduct is within the bounds of N.J.S. 2A:107–2 before we are called upon to consider the statute's constitutionality.