Lloyd D. KISTER et al., Plaintiffs,

v.

OHIO BOARD OF REGENTS et al.,
Defendants.

Ernest L. SEEVERS et al., Plaintiffs,

v.

The OHIO STATE UNIVERSITY et al.,
Defendants.

Civ. A. Nos. 72–180, 72–438.

United States District Court,
S. D. Ohio, E. D.

Aug. 16, 1973.

Judgment Affirmed Jan. 7, 1974.
See 94 S.Ct. 855.

Stanley K. Laughlin, Jr., Leonard J. Schwartz, Columbus, Ohio, Howard R. Besser, Warrensville Heights, Ohio, for plaintiffs.

William J. Brown, Atty. Gen., Eric R. Gilbertson, Asst. Atty. Gen., Columbus, Ohio, for defendants.

Before PECK, Circuit Judge, KINNEARY, Chief Judge and RUBIN, District Judge.

## OPINION

KINNEARY, Chief Judge.

Plaintiffs in these consolidated actions seek declaratory and injunctive relief against the Ohio statutes governing the suspension and dismissal of students and employees of state supported colleges and universities who have been arrested or convicted of certain specified criminal offenses.

This matter is before the Court on the complaint and answer, the defendants' motion to dismiss and the memoranda of the parties in support and in opposition thereto and the briefs and arguments of counsel for both sides on the merits.[1] The parties have also stipulated as to certain facts which are before the Court.

### I

Plaintiffs in Civil Action 72–180 are nine students and one faculty member of the Ohio University in Athens, Ohio. They were arrested on or about May 10, 1972 in Lindley Hall, a building maintained by the Ohio University, and charged with violating Section 2923.61 of the Ohio Revised Code.[2] Plaintiffs

Thomas R. Bates and Pamela Smith were subsequently convicted of violating Section 2923.61. However, they did not receive a hearing as provided for by Section 3345.22 pursuant to a stipulation between counsel that such proceedings should be held in abeyance pending the outcome of this case.

The remaining plaintiffs were either acquitted at trial or convicted of violating other sections of the Ohio Revised Code not relevant to this action. Plaintiffs seek injunctive and declaratory relief against the provisions of Sections 3345.22 through 3345.26 and 2923.61 of the Ohio Revised Code. They also seek to maintain this action as a class action on behalf of themselves, the members of the faculty of the Ohio University and all other students enrolled at the Ohio University.

Plaintiffs in Civil Action 72–438 were both students at The Ohio State University in Columbus, Ohio. Plaintiff Ernest L. Seevers was arrested on May 18, 1972 and charged with violating Section 2923.52 of the Ohio Revised Code. He subsequently entered a plea of guilty to that charge and was later expelled from Ohio State pursuant to Section 3345.23 of the Ohio Revised Code. Plaintiff Richard P. Washington was also arrested on May 18, 1972. However, he was charged with violating Section 2923.61 of the Ohio Revised Code. State of Ohio v. Richard P. Washington, Franklin County Municipal Court, No. 14891–72. This criminal charge is still pending. Neither plaintiff received a hearing as provided for by Section 3345.22.

Plaintiffs request that this Court issue a declaratory judgment holding Sections 2923.52, 2923.61 and 3345.23 of the Ohio Revised Code to be unconstitutional and void. They further seek an injunction to prevent any future suspensions and expulsions pursuant to Sections 3345.22 and 3345.23 of the Ohio Revised

---

1. The Court reserved a ruling on the motion to dismiss pending a hearing on the merits. The Court heard oral arguments on the motion to dismiss and on the merits on May 14, 1973.

2. This statute, as well as the other statutes mentioned in this section, will be discussed in greater detail in Section II of this Opinion.

Code. Likewise, plaintiffs seek to maintain this action as a class action on behalf of themselves and all faculty members, staff members, employees and students of every state supported or state operated college or university in Ohio.

## II

The complaints in these actions attack the constitutionality of what is commonly referred to as House Bill 1219. This measure was passed by the Ohio legislature in June of 1970 apparently as a legislative response to the student disorders of the spring of 1970.[3] House Bill 1219 enacted six different sections of the Ohio Revised Code. The key provision in this statutory scheme is Section 3345.23(D). This subsection lists approximately twenty different sections of the Ohio Revised Code which trigger application of House Bill 1219. If a student, faculty member or staff member is arrested or convicted of one of these offenses, and that offense was committed on or affecting persons or property of a college or university, then the suspension or dismissal provisions of House Bill 1219 are applicable.

Section 3345.22 provides for the suspension of students, faculty or staff members who have been arrested for any offense listed in Section 3345.23(D). Section 3345.22(B) requires the arresting authority to notify the university of the arrest. An adversary hearing before a referee [4] must then be held within five days, subject to reasonable continuances not to exceed ten days. The referee may issue subpoenas to compel the attendance of witnesses and the production of evidence. At the hearing, the student [5] has the right to be represented by retained counsel, the right to cross examine witnesses against him and the right to testify and offer other evidence in his behalf. If the student does testify at the hearing, nothing he says may be used against him in any criminal proceeding unless he waives his right against compulsory self-incrimination. Finally, the referee may require the separation of witnesses and must permit the news media to cover the hearing. If, after the hearing, the referee finds by a preponderance of the evidence the student committed an offense listed in Section 3345.23(D), he must either suspend the student or place him on strict disciplinary probation. If the student is subsequently acquitted in the criminal proceedings, his suspension or probation is terminated and his record expunged. The student does have the right to appeal an order of the referee to the Court of Common Pleas. A student who fails to appear at his hearing is automatically suspended.

Section 3345.23 provides for the automatic dismissal of a student upon his conviction of any offense listed in Section 3345.23(D). The student may apply for readmission upon the lapse of one calendar year. If the conviction is subsequently reversed on appeal, the student must be reinstated and his record expunged. Sections 3345.24 through 3345.26, while also enacted as part of House Bill 1219, are not specifically at issue in this action.

Section 2923.61 defines the misdemeanor of disrupting college activities. This section provides in part:

(A) No person, in circumstances which create a substantial risk of disrupting the orderly conduct of lawful activities at a college or university, shall willfully or knowingly do any of the following:

(1) Enter or remain upon the land or premises of a college or university, or any separate room, building, facility, enclosure, or area thereof, without

---

3. Both Kent State University and The Ohio State University experienced serious student disorders during the spring of 1970 culminating in the death of four students at Kent State.

4. The referee must be an attorney admitted to practice in Ohio who has no connection with the school involved in the hearing.

5. Of course, these and all other provisions of House Bill 1219 discussed below are equally applicable to faculty and staff members.

privilege to do so, or, being on or in any such land, premises, room, building, facility, enclosure, or area, fail or refuse to leave upon request of proper authority, and without reasonable justification or excuse for such failure or refusal;

(2) Violate a restriction on access, curfew, or restriction on assembly imposed pursuant to section 3345.26 of the Revised Code;

(3) Engage in conduct which urges, incites, or encourages another to violate this section, when such conduct takes place in circumstances which create a clear and present danger of such violation.

(B) No person shall willfully or knowingly:

(1) With force or violence, disrupt the orderly conduct of lawful activities at a college or university;

(2) Engage in conduct which threatens or involves serious injury to persons or property at a college or university.

This section was enacted as part of House Bill 1219 and the offenses described in it are incorporated by reference into Section 3345.23(D).

The last statute at issue before this Court is Section 2923.52. This section, which was enacted prior to the passage of House Bill 1219, defines the misdemeanor of second degree riot and is incorporated by reference into Section 3345.23(D).

Plaintiffs contend that the statutory scheme described above creates an unconstitutional prior restraint on free speech and is void for vagueness and overbreadth. Plaintiffs further contend that House Bill 1219 violates the equal protection clause and subjects plaintiffs to double jeopardy. Finally, plaintiffs contend that the procedures established by House Bill 1219 do not meet due process standards.

## III

Plaintiffs seek to maintain this action [6] as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure. The class purportedly consists of all students, faculty and staff members of state supported or state operated colleges and universities in Ohio. However, this definition of the class is far too broad.

In order to be a member of a class it is necessary that each individual have standing to bring the suit in his own right. Thomas v. Clarke, 54 F.R.D. 245, 249 (Minn.1971).

Such is not the case here. Two of the challenged statutes are criminal statutes against which at least some plaintiffs seek injunctive relief and all plaintiffs seek declaratory relief. In Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L. Ed.2d 669 (1971), the Supreme Court held that a genuine controversy must actually exist in order for a plaintiff to have standing to bring an action seeking to enjoin a pending state prosecution.

And persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases. Younger v. Harris, *supra* at 42, 91 S.Ct. at 749.

A plaintiff who has been indicted, arrested or threatened with prosecution would certainly have standing. However, most of the proposed class would not qualify under this test. Therefore, to the extent that plaintiffs seek injunctive or declaratory relief against a pending state criminal prosecution, their proposed class is far too large. In addition, House Bill 1219 applies only to those students who have committed or been accused of committing a specified state criminal offense. A student who has not committed one of these offenses or who has not been threatened with prosecution for one of these offenses has no reason to fear House Bill 1219. There-

---

6. In view of the fact that both actions involved substantially identical questions, the Court will refer to them as one action.

fore, the Court reforms the class to include only those students, faculty and staff members who have either been arrested or convicted of an offense listed in Section 3345.23(D).

## IV

▮▮▮ Plaintiffs seek to enjoin the enforcement of Sections 2923.61 and 2923.52 of the Ohio Revised Code and to have them declared unconstitutional. They contend that these two criminal statutes are unconstitutional on their face. The Court initially notes that while plaintiffs seek injunctive and declaratory relief against these two criminal statutes, they have failed to join as a party defendant any state or local governmental official charged with enforcing them.[7] Therefore, there is no party to this action against whom this Court could grant the relief requested in the complaint. 28 U.S.C. § 2281; *cf.* Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Arneson v. Denny, 25 F.2d 993 (W.D.Wash.1928). However, even assuming that the Court could grant the relief requested in the complaint, we do not believe that we can consider the merits of plaintiff's claims. For the reasons stated in more detail below, we do not believe that any party to this action except plaintiff Washington has standing to request injunctive relief against these statutes. We further believe that while plaintiff Washington has standing he is barred from obtaining relief by the holding of Younger v. Harris, *supra*. In addition, no party to this action has standing to obtain declaratory relief except plaintiff Washington and possibly the convicted plaintiffs. Plaintiff Washington is barred from obtaining declaratory relief by the holding of Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Finally, even assuming that the convicted plaintiffs have standing, we believe

that on the facts of this case we should abstain.

The record indicates that plaintiff Washington has been charged with violating Section 2923.61. In Younger v. Harris, *supra*, the Supreme Court held that absent "extraordinary circumstances" a federal court should not enjoin a pending state prosecution or issue a declaratory judgment holding invalid the statute under which the prosecution is brought. See also Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 509, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); 28 U.S.C. § 2283. The Court does not believe that any "extraordinary circumstances" exist in this case and that, therefore, injunctive relief would be inappropriate. The Court further finds no reason why declaratory relief should be granted on the facts of this case when injunctive relief would not be appropriate. Samuels v. Mackell, *supra*.

▮▮▮ However, even assuming that plaintiff Washington was dismissed as a party to this action, plaintiffs' difficulties have only just begun. The Court believes that the remaining plaintiffs do not have standing to request injunctive relief against these statutes. Some of the remaining plaintiffs have been convicted of violating these statutes. Prior to their convictions, these plaintiffs had an acute, live controversy with the state. However, this controversy has been resolved by the appropriate state court in favor of the state. These plaintiffs do not allege that they will in the future engage in conduct that will again result in their prosecution under these statutes. *See* Reed v. Giarrusso, 462 F.2d 706 (5th Cir. 1972). Nor have they alleged that some state or local official has threatened them with prosecution under these statutes if they engage in certain specified conduct. *See* Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Police Department of

---

7. The defendants are various officials connected with the universities. While some of these officials do play some role in the suspension and dismissal proceedings provided for by Sections 3345.22 and 3345.23, they are not charged with the enforcement of the criminal statutes at issue in this action.

Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); Thoms v. Heffernan, 473 F.2d 478, 483–485 (2d Cir. 1973). Therefore, at least in this respect, these plaintiffs have no more standing to bring this action than an ordinary citizen who has never been prosecuted under these statutes. The case or controversy requirement of Article III of the Constitution requires that "federal plaintiffs must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." Linda R. S. v. Richard D., 410 U.S. 614, 93 S. Ct. 1146, 35 L.Ed.2d 536 (1973).

In another sense, however, these plaintiffs do have some interest in the outcome of this lawsuit. A criminal conviction, even for a misdemeanor, carries with it certain collateral consequences. While the record does not so indicate, these plaintiffs may have been incarcerated or placed on probation as a result of their convictions. In addition, each of these plaintiffs now has a criminal record that will follow him the rest of his life. Therefore, while these plaintiffs would appear to lack standing to obtain injunctive relief against the current or future enforcement of these statutes, they do have some interest in an action to have these statutes declared unconstitutional.

The record does not indicate that these plaintiffs are currently in custody and these plaintiffs do not seek release from custody. Therefore, they are not precluded from seeking relief by the requirements of 28 U.S.C. § 2254; see also Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). This conclusion, however, does not resolve the question of whether it would be appropriate for a federal court to grant relief in this situation. If plaintiffs believe that they have been convicted under an unconstitutional statute, that issue can be raised and resolved in the state courts either on appeal or in a collateral attack proceeding. We recognize that a plaintiff in a civil rights action is not required to exhaust his available state remedies. See Preiser v. Rodriguez, supra. However, the existence of a potentially speedy method of resolving plaintiffs' claims in the state courts must be considered in determining whether this Court should await the state court's resolution of these questions. The state court would have the advantage of considering plaintiffs' constitutional claims in the context of a specific case with a record indicating what conduct took place. The state court would, therefore, be in a position to state exactly what conduct fell within the ambit of the statute and to authoritatively interpret any possible ambiguities. This procedure is preferable to this Court attempting to determine whether these statutes are unconstitutional on their face.

■■ We recognize, of course, that abstention is ordinarily inappropriate where "statutes are justifiably attacked on their face as abridging free expression . . . ." Dombrowski v. Pfister, 380 U.S. 479, 489–490, 85 S.Ct. 1116, 1122, 14 L.Ed.2d 22 (1965); see also Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). However, we are also mindful of our duty to refrain from deciding potentially difficult constitutional questions when a state court could quickly and easily resolve any possible ambiguities and thereby moot any constitutional claim. See Oldroyd v. Kugler, 352 F. Supp. 27 (N.J.1973), aff'd, 412 U.S. 924, 93 S.Ct. 2753, 37 L.Ed.2d 153 (1973); see also Dombrowski v. Pfister, supra at 491 of 380 U.S., 85 S.Ct. 1116; Baggett v. Bullitt, 377 U.S. 360, 375–379, 84 S. Ct. 1316, 12 L.Ed.2d 377 (1964). We believe that in this situation we should await the outcome of plaintiffs' appeals and post conviction proceedings. We further believe that plaintiffs' constitutional claims will probably be mooted by the decisions of the state courts interpreting the statute. Again we emphasize that we are not imposing an exhaustion of state remedies requirement on a federal plaintiff in a civil rights action.

Rather, we are stating that on the facts of this case and given the fact that the convicted plaintiffs have available to them a means by which the two statutes in question could be speedily and authoritatively interpreted, we should await this determination before considering plaintiffs' claims.

■ This result is consistent with the long standing federal policy of avoiding unnecessary interference with state court proceedings. Historically, those convicted of state crimes have been required to litigate their constitutional claims in the state courts before seeking federal remedies. This requirement should not be abandoned even in a federal civil rights action where the plaintiff has been recently convicted of a state crime and a state court could quickly resolve his constitutional claims either on appeal from his conviction or in a collateral attack proceeding. *Cf*. Brown v. Ceci, 331 F.Supp. 718 (E.D.Wis.1971).

■ One individual, not a named party to this action, has already obtained a state court opinion concerning one of the offenses defined in Section 2923.61. In City of Cincinnati v. Finger, No. 11716 (Hamilton County Ct. of Appeals March 6, 1972), motion to certify the record overruled, 45 O.Bar 940 (Ohio Sup.Ct. June 9, 1972), the court held that Section 2923.61(B)(2) is not unconstitutionally vague and overbroad. However, the fact that one court has issued an opinion dealing with one particular provision of Section 2923.61 does not aid plaintiffs' argument that this Court should refrain from abstaining. Section 2923.61 contains several criminal offenses and subsection (B)(2) is probably the best defined offense in the entire statute and one which this Court would probably find constitutional on its face if we reached the merits. However, the Ohio courts should be given a chance to interpret the language of the other provisions of Section 2923.61 in the context of a specific case before this Court should act. The Court, therefore, declines to consider the arguments of the convicted plaintiffs pending their litigation of these issues in the appropriate state court. *See* Oldroyd v. Kugler, *supra*.

■ The only other plaintiffs in this action are those who were either acquitted at trial or convicted of offenses not relevant to this action. As to these plaintiffs, the Court does not believe that they have standing to obtain either injunctive or declaratory relief against the statutes in question. While at one time these plaintiffs may have had an acute live controversy against the state, that time has passed and, absent any allegation that further prosecutions are either imminent or threatened, these plaintiffs have no real interest in the outcome of this action.

V

Plaintiffs' remaining allegations deal primarily with the procedures established by Sections 3345.22 and 3345.23 pursuant to which a student is suspended or dismissed from the university. The provisions of these statutes have already been summarized above and, without repeating that discussion, we note that in many respects the statutes in question go well beyond the requirements of existing case law. In fact, the procedures set forth in these statutes will probably prove so time consuming and expensive in actual practice that they will grind to a halt in the event of a large scale disorder involving mass arrests.[8]

■ The Court initially notes that plaintiffs do have standing to challenge these sections since each plaintiff has either been suspended or dismissed or has

---

8. If, for example, one hundred students are arrested on May 1, 1973 and charged with violating Section 2923.61, Section 3345.22 requires that each student receive a full adversary hearing within, at most, fifteen days.

Aside from the practical problems involved in arranging for one hundred full adversary hearings on short notice and then finishing all of them within fifteen days, the expense of such a procedure would be enormous.

been threatened with suspension or dismissal pursuant to them. Plaintiffs allege that these statutes are unconstitutional on their face in that:

1. Section 3345.22(B) does not require the student to receive "adequate notice in writing of the specific ground or grounds and the nature of the evidence on which the disciplinary proceedings are based." General Order on Judicial Standards of Procedure and Substance in Review of Student Discipline, 45 F.R.D. 133, 147 (W.D. Mo.1967).

2. Section 3345.22(A) fails to provide the student with sufficient time prior to his hearing to prepare for his defense.

3. A student who is in jail at the time of his hearing will be automatically suspended pursuant to Section 3345.22(H).

4. Section 3345.22(E) does not require the referee to prepare a written opinion in support of his findings.

5. Section 3345.23 fails to require a student to receive a hearing prior to his dismissal.

■ We note that most of these arguments are directed primarily at the legislature's alleged failure to spell out in detail the meaning of certain language in the act. Fortunately, we are not required to declare unconstitutional every statute that fails to provide for every possible contingency. Legislative enactments are presumed to be constitutional and a court must, if it can, interpret a statute so as to find it constitutional. Our function, therefore, is to examine the statute to see if it is constitutional or if it can be interpreted in a constitutional manner. Unfortunately, the Court is not aided by any Ohio cases construing these provisions.

Plaintiffs' first argument involves the notice provision of Section 3345.22(B). That provision simply provides that "immediate notice of the time and place" of the hearing must be given to the student. Plaintiffs contend that this language is deficient because it fails to require "adequate notice in writing of the specific ground or grounds and the nature of the evidence on which the disciplinary proceeds are based." General Order on Judicial Standards of Procedure and Substance in Review of Student Discipline, *supra*.

■ While we agree with plaintiffs that the statute does not specifically describe the type of notice a student must receive, we do not believe that this omission makes the statute unconstitutional on its face. This statute can be easily interpreted to require the kind of notice suggested by plaintiffs. In addition, we believe that the question of whether notice was adequate depends on the facts of each individual case. We would not hesitate to overturn a referee's decision if a student could prove that the notice of hearing he received was constitutionally inadequate.

■ Plaintiffs have alleged in their complaint that they received inadequate notice prior to their hearings. However, plaintiffs have offered no proof on this issue and, therefore, we find this allegation to be without merit. In addition, any student who did receive inadequate notice could raise that issue by appealing the referee's order to the Court of Common Pleas pursuant to Section 3345.22(G). We believe that an Ohio court interpreting this language would recognize the requirements of existing case law and interpret the language in question to require specific notice to the student of the charges against him and the nature of the evidence the university will produce. *See also* Dixon v. Alabama State Board of Education, 294 F. 2d 150, 158 (5th Cir.), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961).

■ Plaintiffs further contend that Section 3345.22(A) fails to provide them with sufficient time to prepare for their hearings. That section provides that a hearing must be held within five days

and permits the referee to grant reasonable continuances not to exceed ten days. We do not believe that this provision is unconstitutional on its face. This Court does not believe that there is any magic minimum number of days which must be granted to all students in order for them to prepare for their hearing. Rather, whether or not a student has been given sufficient time to prepare depends on the facts of each individual case. No plaintiff to this action has alleged that he was not given sufficient time to prepare for his hearing. Therefore, this contention is without merit.

■ Plaintiff's third contention is that Section 3345.22(H) is unconstitutional because it could be applied to a student who failed to make bond and who remained in jail during his hearing. That section provides that a student who fails to appear at his hearing is automatically suspended. We are not convinced that this section was intended to apply to this situation. Rather, we believe that this section was intended to deal with the problem of students who deliberately fail to attend their hearing as opposed to those students who, for reasons beyond their own control, are unable to attend. We again note that if the referee does suspend a student, that decision can be appealed and we believe that an Ohio court would not interpret this language as plaintiffs fear. However, we further note that even if plaintiffs' interpretation is correct, the student will, at least in some cases, not be prejudiced by this result. If a student remains in jail pending the outcome of his criminal case, it is highly unlikely that he will be able to keep up with his school work and he definitely will not be able to attend classes. The fact that he has not been formally suspended would, therefore, be of little comfort to him.

■ Plaintiffs contend that Section 3345.22 does not expressly state that the referee must prepare a written opinion in support of his decision. However, this requirement is clearly there by implication. Section 3345.22 provides for a full adversary hearing and allows the student to appeal an adverse ruling to the Court of Common Pleas. We therefore believe that in actual practice the referee, who is an attorney, will prepare a written opinion. We also note that the plaintiffs to this action who have received a hearing have not alleged that they were not provided with a written opinion by the referee. We therefore find this contention to be without merit.

Plaintiffs' final argument is directed against the provisions of Section 3345.-23. That section provides that if a student is convicted of committing one of the listed criminal offenses and that offense was committed on or affecting persons or property on a college or university, that student is automatically dismissed from school. Plaintiffs first argue that this section is unconstitutional because it requires the dismissal of a student who has been convicted of one of the listed offenses even though that student has not received a hearing to determine whether the offense was committed on or affecting persons or property of the college.

■ A careful examination of the legislative scheme established in Sections 3345.22 and 3345.23 reveals that the legislature apparently believed that all students would be afforded a mandatory hearing prior to their suspension pursuant to Section 3345.22. This hearing would determine where the offense, if any, was committed. Therefore, there would be no reason to relitigate the issue if the student was subsequently convicted of the offense. The Court does agree, however, that it is possible that a student would not receive his Section 3345.22 hearing. Plaintiffs contend that in this situation the student would be automatically dismissed if he were convicted of one of the listed offenses. We disagree. The statute requires that the offense be committed on or affecting persons or property on a college. 1970 Ops. Ohio Att'y. Gen. 70–154 (1970). The university cannot dismiss the student until this fact has been established. Whether this fact must be established

by a post conviction hearing or by an examination of the transcript of the student's criminal trial is a question we need not determine. Any student who finds himself in this situation could seek relief from the state court and that court would be able to authoritatively decide what should be done in this situation. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

 Plaintiffs also contend that the phrase "on or affecting" is unconstitutionally vague. Even assuming that a broad reading of this language would make it unconstitutional, the Court notes that this phrase could easily be given a narrowing interpretation by a state court. We therefore decline to reach the issue. *See also* Ops. Ohio Att'y Gen., *supra.*

### VI

 The remaining allegations in the complaint can be disposed of summarily. Plaintiffs contend that House Bill 1219 violates the Equal Protection Clause of the Fourteenth Amendment. However, education is not a fundamental right, San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S. Ct. 1278, 36 L.Ed.2d 16 (1973) and this case does not involve a suspect classification. We therefore see no reason to upset this legislative enactment which was designed to cope with the problem of campus disorders. However, we take this opportunity to note that while education is not a fundamental right, that does not mean that the university may arbitrarily dismiss a student without due process of law. *Cf.* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970). Finally, we do not believe that these statutes constitute cruel and unusual punishment or violate the prohibition against double jeopardy.

Whereupon, the Court determines that plaintiffs' request for injunctive and declaratory relief against this legislative scheme is without merit and it is therefore denied.